THE BRIDGEPORT FIRE AND MARINE INSURANCE COMPANY, Appellants, v. THOMAS WILSON, JAMES E. GOLL, HENRY R. WILSON and HENRY BREWSTER, Respondents.

Where the covenant is one of general indemnity merely against claims and suits, want of notice of an existing suit against the principal does not go to the cause of action, but the judgment is *prima facie* evidence only against the indemnitor; and, in a suit upon his covenants, he may be let in to show that the principal had a good defense, which he neglected to make, to defeat the judgment; or that the judgment was obtained by fraud or collusion, &c.

The same rules in respect to notice, which apply to the indemnitor, apply also to his sureties.

THIS action is upon a bond of indemnity given to the plaintiffs by the defendants, under the following circumstances: In March, 1855, the plaintiffs, a Connecticut insurance company, insured Wage and Scott, of Buffalo, $1,000 on their stock of goods for one year. In May, the goods were damaged by fire, and Wage and Scott claimed a loss of 850 dollars. The plaintiffs admitted a loss of $603.45, and were ready to pay that sum on the 16th July, when it became payable. On the 18th July, Wilson, Goll & Co., a firm composed of three of the defendants, brought a suit in Connecticut, by foreign attachment, against Wage and Scott, and attached the debt of $603.45, due to them from the insurance company. On the 27th August, 1855, Austin Barnum, claiming to be the assignee from Wage and Scott, of their said claim, commenced an action thereon against the plaintiffs in the Superior Court of Buffalo. In October, 1855, Wilson, Goll & Co., recovered judgment in the attachment suit against Wage and Scott, for $910.45, and on the 8th November, issued an execution thereon, claiming from the plaintiffs the sum of $603.45, by virtue of the lien created by the attachment. On the 9th November, Wilson, Goll & Co., as principals, and the defendant Brewster, as their surety, executed to the plaintiffs the bond in suit, and the plaintiffs thereupon paid said sum of $603.45, on the execution of Wilson, Goll & Co. The bond recites the pro-

ceedings of Wilson, Goll & Co., against Wage and Scott, the judgment and execution, the admission by the plaintiffs of their indebtedness to Wage and Scott in the sum of $603.45, and the lien obtained on said debt by the attachment, and has a condition in the following words: "Now, the condition of this obligation is such, that if the said Bridgeport Fire and Marine Insurance Company shall pay to the officer to whom said execution is directed, and who by virtue thereof shall make demand of said insurance company of the goods and effects in their hands, of said Wage and Scott, said sum of $603.45; and if we, the said obligors, shall indemnify and save harmless said insurance company from all actions and suits, both in law and equity, and from all loss, cost and damages, by reason of the payment of said sum of money as aforesaid, then this obligation to be null and void, otherwise to be and remain in full force and effect." Barnum prosecuted his suit against the plaintiffs, and on the 14th March, 1856, recovered a judgment therein for $945.70, which the plaintiffs paid on execution.

The complaint in this action alleged the facts above stated, and also that the defendants had notice of the pendency of Barnum's suit, and that they refused to indemnify the plaintiffs, according to the condition of the bond. The complaint also alleged that the bond was by mistake so drawn and executed as not to express the agreement of the parties, which, it was alleged, was that Wilson, Goll & Co. should take upon themselves the defense of the Barnum suit, and fully indemnify the plaintiffs against it; and that the plaintiffs are entitled to have the bond reformed in that respect if necessary. The defendants put in separate answers denying all liability to the plaintiffs, denying also that the defendants had notice of the pendency of the Barnum suit, and setting up that there was a good defense to that suit, to wit: that the assignment from Wage and Scott to Barnum was not executed until after Wilson, Goll & Co., levied by their attachment, and that it was antedated and was fraudulent, which defense, the answers alleged, the present plaintiffs knew of and neglected to interpose. At the

trial, the plaintiffs proved the bond above set forth, and gave evidence tending to show that it was executed under the circumstances above stated.   They also proved the payment by them to Wilson, Goll & Co., of $603.45, and they put in evidence the judgment roll and execution in favor of Barnum against themselves, and proved that they paid the execution. They also gave evidence, which, they claim, tended to show that the defendants had notice of the Barnum suit at the time they executed the bond.   They also offered evidence to show the alleged mistake in the bond, but it was objected to by the defendants and rejected, and the plaintiffs excepted. At the close of the plaintiffs' case, the defendants moved to dismiss the complaint on the grounds: 1. That there was no notice of the suit in Buffalo to Wilson, Goll & Co., until after trial and judgment there.   2. That there was no proof of the assignment of Wage and Scott to Barnum, or of any fact contained in the Buffalo judgment, the judgment not being proof as against the present defendants of any fact contained in it.   3. That the company knew of the defense of Wilson, Goll & Co., and that the assignment was claimed to be fraudulent and antedated, and they should have interposed that as a defense, and also the attachment and payment to Wilson, Goll & Co., but they did not.   The court dismissed the complaint, and the plaintiffs excepted.   The judgment entered on that ruling was affirmed at General Term, and the plaintiffs now appeal to this court.

*J. H. Reynolds*, for the appellants.

*H. M. Ruggles*, for the respondents.

SMITH, J.   It is clear, from the terms of the bond, and the circumstances attending its execution, that, by that instrument, the defendants covenanted to indemnify the plaintiffs against the claim of Wage and Scott, and all suits to enforce it.   The fair construction of their bond is, to indemnify the plaintiffs and save them harmless from "all loss, cost and damages," by reason of their paying over to the defendants the sum of $603.45, which the plaintiffs admitted to be

owing to Wage and Scott upon their claim against the plaintiffs, and which the defendants, as creditors of Wage and Scott, had garnisheed, and also against "all actions and suits, both in law and equity," by Wage and Scott or their assigns, to enforce such claim. The occasion and necessity of an indemnity arose from the fact, that, if the plaintiffs should pay the sum demanded by Wilson, Goll, & Co., there was reason to apprehend that, notwithstanding such payment, they could be compelled to ratify the claim of Wage and Scott also. For aught that appears, the enforcement of that claim was the only source from which "loss or damage" could ensue to the plaintiffs, "by reason of their paying" to Wilson, Goll & Co. as proposed. The general terms of the condition are broad enough to include the claim of Wage and Scott, and it is, therefore, by proper construction, indemnified against as effectually as if the bond had so stipulated in express words. The stipulation to indemnify against "all *actions and suits,* \* \* by reason of the payment of said sum of money as aforesaid," is to be construed in like manner, and is to be regarded as a general covenant of indemnity against "all actions and suits" to enforce the claim of Wage and Scott, whether brought by them or by a third person deriving title from them. The Barnum suit was, therefore, within the terms of the covenant to indemnify. This is so, whether the defendants knew, or did not know, of its pendency at the time of the execution of the bond, as it is satisfactorily proved that the principal obligors knew as early as July that the claim had been assigned to Barnum, or at least that Wage and Scott so asserted, and the terms of the bond are sufficiently comprehensive to include all suits to enforce the claim, whether then pending or thereafter to be commenced.

Indeed the defendants' counsel did not strenuously contend on the argument that the Wage and Scott claim, and the Barnum suit, are not within the indemnity. That position was not suggested at the trial, as one of the grounds on which a dismissal of the complaint was moved for or granted. It is not now made a point by the counsel for the principal obligors. The counsel for the surety presents it, but he

urges nothing in its support, except that the action and the claim are not mentioned in the bond. Although they are not specifically mentioned, they are embraced by the general terms of the condition, as has been already remarked, and are clearly within the scope of the indemnity which the bond was intended to secure.

The subject next to be considered, is the obligation resting upon the plaintiffs, in respect to giving notice of the Barnum suit to the defendants, and the effect of the want of such notice. I do not assent to the position of the counsel for the defendants, that the want of notice necessarily defeats the action; nor to the claim of the plaintiffs' counsel, that the defendants are bound by the event of the Barnum suit, without notice. In answer to the position first stated, it is sufficient to say that the bond does not, in terms, require notice of suits to be given, as a condition of the defendants' liability, and, therefore, the want of notice does not necessarily prevent the plaintiffs' recovery. On the other hand, it is apparent that the obligors did not, in terms, stipulate to abide by the result of a suit to which they were not parties, and of which they had no notice, and, therefore, they are not concluded by the judgment in favor of Barnum. They entered into a general covenant of indemnity against suits, and they were entitled to an opportunity to defend. Although they had no opportunity to defend the Barnum suit during its progress, yet, if they are allowed in this action to avail themselves of any defense that might have been interposed successfully in that suit, they are not prejudiced by the want of notice. Such opportunity is given them by holding that the judgment in the Barnum suit, although *prima facie* evidence of the validity of the claim thereby established, is not conclusive against them, and they may be let in to show that it was obtained by collusion, or that a valid defense existed to the claim, which the insurance company neglected to set up. There is abundant authority for holding that the rule above stated is applicable to the present case. The cases relating to the subject of notice to the indemnitor, and the effect of the want of it, are numerous, and some of

them are apparently conflicting, but they are easily reconciled, if certain obvious distinctions between different classes of cases are kept in view. There is a marked distinction between covenants which stipulate against the consequences of a *suit*, and those which contain no such undertaking. In the latter class, the judgment is *res inter alios acta*, and proves nothing except *rem ipsam* against the indemnitor, unless he had notice and an opportunity to defend. *Douglass* v. *Howland* (24 Wend., 35), is a case of that description. There, one Bingham agreed with the plaintiff to *account* and pay over such sum as should be found to be owing by him, and the defendant *covenanted* that Bingham should *perform the agreement*. Bingham did not account, and on his default, the plaintiff filed a bill in chancery against him, to compel an account, and obtained a decree for a sum found due. It was held, that the decree was not evidence against the defendant, for the reason that he had covenanted merely that Bingham should account and pay over the balance found due; not that he should, on default, abide any decree in chancery or judgment at law for not accounting.

Again, covenants to indemnify against the consequences of a suit, are of two classes. 1. Where the covenantor expressly makes his liability depend on the event of a litigation to which he is not a party, and stipulates to abide the result; and, 2. Where the covenant is one of general indemnity merely, against claims or suits. To the latter class belongs the case now before us. In cases of the first class, the judgment is conclusive evidence against the indemnitor, although he was not a party, and had no notice, for its recovery is the event against which he covenanted. (*Patton* v. *Caldwell*, 1 Dall., 419.) In those of the second class, the rule already stated applies, to wit : that the want of notice does not go to the cause of action, but the judgment is *prima facie* evidence only against the indemnitor, and he may be let in to show that the principal had a good defense to the claim. The following cases support the rule last stated: *Duffield* v. *Scott*, 3 T. R., 374; *Smith* v. *Campton*, 3 B. & A., 407; *Lee* v. *Clark*, 1 Hill, 56; *Rapelye* v. *Prince*, 4 id.,

119; *Aberdeen* v. *Blackmer*, 6 id., 324. In each of the classes of·cases above mentioned, the indemnitor is, of course, understood as saving the right, which the law gives in every case where the suit is between third persons, of contesting the proceeding on the ground of collusion, for the purpose of charging him. (*Per* COWEN, J., in *Douglass* v. *Howland*, *supra.*) The same rules in respect to notice, which apply to the indemnitor, are applicable also to his *surety*, in like cases. (*Lee* v. *Clark*, *supra; Westervelt* v. *Smith*, 2 Duer, 449; *Thomas* v. *Hubbell*, 15 N. Y., 405.) The rules above adverted to, are to be taken with the qualification that in every case where notice is expressly stipulated for, the want of it will, of course, defeat the action. The result of the foregoing considerations is, that the judgment was at least *prima facie* evidence of the claim of Barnum and of its amount as against the defendants, and that the plaintiffs having paid it, were entitled to recover for a breach of the bond, unless it appeared that there was a defense to the suit which the plaintiffs were informed of and neglected to interpose, or that the judgment was obtained by collusion.

The burden of proving those facts was upon the defendants. But by the ruling at the trial, the burden of *disproving* them was thrown upon the plaintiffs. There is no evidence establishing either of them, and if there had been any, it should have been submitted to the jury. The judgment is *prima facie* evidence of the assignment to Barnum at the time alleged in his complaint, to wit, the 9th July, 1855, nine days prior to the suit of Wilson, Goll & Co. There is no proof whatever, that it was antedated or fraudulent in any respect. If it was in fact prior in time, and was made in good faith, the proceedings of Wilson, Goll & Co., and the payment to them by the plaintiffs, constituted no defense to Barnum's suit. It was suggested on the argument, that the circumstance that the trial was had two days after the answer was put in, was not, necessarily, evidence of collusion. It may have·been, and probably was, the result of an arrangement between counsel for their own convenience, that in consideration of the length of time given to serve

the answer, the defendants would waive the usual notice of trial and allow the issue to date as if the answer had been duly served. But if the testimony raised a question of fraud, it should have been given to the jury.

The case has been considered thus far upon the assumption that the defendants had no notice of the suit. The plaintiffs insist, however, that there was sufficient evidence in the case to go to the jury on that question, and to warrant a finding in their favor. The contents of the letters written by Wilson, Goll & Co. to Ives and Brewster, in the last days of July, 1855, and the fact of their giving the bond in November, unconnected with other circumstances, are consistent with the idea that Wilson, Goll & Co. were then ignorant of the fact that Barnum had commenced a suit to recover the claim assigned to him by Wage and Scott. But those circumstances, taken in connection with the letters and telegrams sent by Wilson, Goll & Co. to the plaintiffs' agents, a few days after the trial, present evidence of a very different character. Those later communications show that the writers were then aware of the suit and its result, yet they contain no complaint or suggestion that they were kept in ignorance of the pendency of the suit until after the trial. The writers say, rather apologetically than complainingly, that they did not know of the *trial*, but they assume the conduct of the defense.; they direct the employment of counsel to set aside the judgment; they express a determination to appeal from it, and in a letter to the secretary of the company, they speak of the suit as *their own*. These circumstances following the trial, taken in connection with those which preceded it, fully sustain the position of the plaintiffs' counsel. He might legitimately have argued from them that Wilson, Goll & Co. knew of the Barnum suit during its pendency, or at least as early as the giving of the bond in suit, and a verdict to that effect would have rested upon sufficient testimony. Assuming that they had such notice, they were concluded by the judgment.

In this connection it is proper to advert to the ruling of the court, striking out portions of the testimony of Henry

W. Chatfield, a witness examined under a commission on the part of the plaintiffs. The witness was the president of the insurance company at the time the bond was given. He testified among other things, that in the negotiations which resulted in the execution of that instrument, Wilson, Goll & Co., agreed orally to indemnify the plaintiffs against " the claim made in the *Buffalo suit*, and the *costs and expenses* of that suit," and that Wilson, Goll & Co., " should take care of the defense of the suit, and the plaintiffs were to have no trouble or responsibility about it." These portions of his testimony, and others of a similar tenor, were struck out on the defendants' motion, and the plaintiffs excepted. The case does not state on what ground the motion to strike out was made or granted, but it probably was that the testimony was material only upon the question whether there was a mistake in the bond, and the branch of the case relating to a reformation of the bond could not be tried by a jury. It is apparent, however, that the testimony had a direct bearing upon the question of notice, and for that reason its rejection was erroneous.

In respect to the reformation of the bond, sought on the ground of an alleged mistake, it is enough to say that there is no evidence of a *mutual* mistake; or in other words, that the understanding which the plaintiffs' president, Chatfield, testified he had of the oral agreement, was also had by the other party. The witness Ives, who acted as the attorney of Wilson, Goll & Co., in the negotiation and drew the bond, was examined by the plaintiffs, but he failed to show such an understanding on the part of the defendants. On the contrary, his testimony tends to show that the bond was drawn according to the oral agreement of the parties. There is, therefore, no ground for reforming the bond. But as the plaintiffs made out at least a *prima facie* case, entitling them to recover on the bond in its present form, the court erred in dismissing the complaint. The judgment of the General Term and that of the Special Term should be reversed, and a new trial ordered, with costs to abide the event.

All the judges concurring, judgment reversed.