By the Court.—Curtis, Ch. J.
The appellants contend that the court erred in denying their preliminary motion at the trial, to dismiss the complaint. They urge that the complaint does not show that the plaintiff has been damnified or incurred any legal liability in consequence of any matter therein alleged, and that, to entitle the plaintiff to recover, it was necessary to show, either actual damages sustained, or a fixed legal liability incurred.
There is a difficulty with this claim of the appellants. Their bond is a departure from a simple contract to indemnify against damage. It is conditioned for the payment of the debts of the firm in a specified time, as well as to hold harmless the obligee from the payment of them. The condition was broken on the failure of ° Chapman to pay the debts of the firm within the specified time. The, plaintiff, the obligee, had the right to recover the amount of the debts, when Chapman made default.
The complaint is upon this bond, executed by the defendants, which fixes and limits the measure of damages for this breach to the amount of the debts not paid by Chapman. The payment of these debts was a specific act, provided for by the terms of the instrument, to which the appellants were parties.
Where the obligation is that the party indemnified shall not sustain damage by reason of the acts or omissions of another, or by reason of any liability thereby incurred, there is no breach until actual damage is sustained, which the party indemnified must prove against the indemnitors to sustain his action.
*252 The distinction is recognized between this last described class of cases and those like the present, where the obligation is to perform a specific thing and to hold harmless the obligee from a liability, when the contract is broken upon a failure to do the act, or when liability is incurred (Gilbert v. Winan, 1 Conn. 550 ; Sedgwick on Damages, 2 Ed. 313; Wright v. Whiting, 40 Barb. 235 ; Belloni v. Freeborn, 63 N. Y. 390). In the latter case it was said by Allen, J., that when the bond was conditioned, as in this case, to pay the debt and save harmless the obligee against his liability to pay the same, the obligee might recover the entire debt upon default in its payment, without having paid anything.
The defendant Chapman failing to pay the debts at the expiration of the nine months, there was an extension of six months’ further time granted him in which to do it, to which the other defendants, the appellants, became parties, by a consent indorsed upon the bond' At the expiration of this extension, Chapman still failing to pay the debts of the firm, and the appellants, upon whom demand was made refusing to pay, and the creditors having presented their debts as claims against the plaintiff’s testator’s estate, and eighteen months having elapsed, and they threatening suits, they were paid by the plaintiff out of the testator’s estate. The legal remedies of the plaintiff against Chapman’s estate were exhausted by judgments and executions returned unsatisfied, before this action was commenced.
Chapman failed to pay the notes in full, given to the plaintiff and secured by the chattel mortgage. This mortgage was foreclosed, and a judgment for a deficiency was recovered against Chapman for between $1500 and $1600, upon which an execution was also issued and returned unsatisfied. These judgments and unsatisfied executions show the insolvency of Chapman. There is no claim made of any collusion between the *253 plaintiff and Chapman, and the recovery of the judgments against him by confessions, does not impair their legal effect. It was her duty as executrix to recover them in the mode that caused the least expense and delay (Underhill v. Hunt, 3 Denio, 321; Bridgeport Ins. Co. v. Wilson, 34 N. Y. 275).
The defendants introduced no evidence to show that the condition of their obligation for the payment of the firm debts, had been complied with. Their nonpayment after the expiration of the time limited for their payment, and their amount sufficiently appears from the proofs in the case. The defendant Chapman testifies to the effect that their firm had the goods of these creditors, and that he examined the bills with the plaintiff’s agent, Mr. Spear, and found they were all correct td the best of his knowledge.
The claim of the appellants that they were discharged from liability on the bond in suit, by a variation in the agreement between the executrix and Chapman is not sustained by the evidence. It is true, that Chapman testified that by an agreement between him and the plaintiff made subsequent to the written agreement, he had permission to sell other horses than those for which permission was given him in the written agreement. But on his cross-examination he gives a different version of it, and admits that he falsely stated to plaintiff’s agent when the extension of the bond was made, that he had these three other mortgaged horses out at pasture, when in truth he had previously sold them, and that he only let it be known that he had done this when the plaintiff sought for them, to sell under the foreclosure of the mortgage. The testimony in the case justifies the refusal of the court to find that there was this permission given to the defendant Chapman to sell these three other mortgaged horses. The plaintiff made every reasonable effort to recover the ° mortgaged property, and the appellants cannot take *254 advantage of the' fraudulent acts of their principal, Chapman, in respect to the mortgaged property, to exonerate themselves from responsibility.
The sureties claim that they were discharged, by the neglect of the plaintiff to file a copy of the chattel mortgage within thirty days before November 14, 1875, to preserve the security. Copies had been filed for each of the preceding years, but it had been foreclosed July 24, 1875, and no copy was thereafter filed. The plaintiff had proceeded under the mortgage and duly foreclosed it, and if the principal for whom these appellants were sureties saw fit previously to secretly abstract, and convert some of the mortgaged chattels to his own use, which the plaintiff could not find to foreclose, it is not for them to take advantage of it and be benefited by his bad faith towards the plaintiff.' There was no request on their part that a copy should be filed, or that any steps should be taken to enforce the mortgage, and no ground exists in such contingency to relieve the sureties (Schroeppel v. Shaw, 3 N. Y. 446).
The mortgage itself was a purchase money mortgage, and made to secure primarily the notes given for the purchase, and at no time was it as a security ample enough to pro video for and secure the old partnership debts, or any portion of them. The omission to refile it, even if the plaintiff had been under any obligation towards the sureties to do so, and they had requested it and it had been unforeclosed, would not have damnified the appellants (Black River Bank v. Preston, 41 N. Y. 453). The evidence fails to establish the neglect of any obligation on the part of the plaintiff, towards the sureties in reference to filing a copy of the chattel mortgage.
The sureties insist that they, were discharged from any liability over $2000 on the bond, in consequence of the plaintiff’s filing in the register’s office on November *255 10,1874, a certificate that her interest in the mortgaged premises was then only $2,000, being the amount of the unpaid notes given for the purchase.
The omission to refile a copy of a chattel mortgage and a statement of the interest of the mortgage by virtue thereof in the property, under chapter 501, Laws of 1873, only invalidates it against the creditors of the. mortgagor and subsequent purchasers or mortgagees in good faith. The position of Chapman and these sureties was unaffected by the amount named in the statement. The mortgaged property was not worth more than enough to pay the two notes. There was no bad faith about it on the plaintiff’s part. It is shown to have been an error of her agent committed inadvertently, by which reference to these partnership debts was omitted in the statement.
If the appellants are to be put in the attitude of sureties who have paid the debt, and are thereby entitled to be substituted in the place of the creditor as to all the security held by the creditor to enforce payment of the principal debtor, then, in the language of Chancellor Kent (Hayes v. Ward, 4 Johns. 130), the creditor “must do no willful act, either to poison it in the first instance, or to destroy or cancel it, afterwards.”
There is no evidence that the sureties are thus prejudiced. There is no obligation resting on the holder of a chattel mortgage, under such circumstances, at his own expense and trouble, to file copies of the mortgage and also statements, when the sureties make no request to him to do so, and make no offer to pay the expenses of it, and especially when their principal is, without the knowledge of their creditor, appropriating and selling the mortgaged chattels. It was their business, to see that their principal committed no torts of this character, and if they wished protection from his bad faith or from his other creditors, if he had any, to notify the mortgagee and to request the refiling of the mortgage *256 and statement, and to offer to pay for the expense of it (Schroeppel v. Shaw, 3 Com. 446; Hoffman v. Hulburt, 13 Wend. 377; Herrick v. Borst, 4 Hill, 650; Supervisors Monroe Co. v. Otis, 62 N. Y. 88).
The appellant’s exceptions do not call for a reversal of the judgment and a new trial.
The judgment appealed from, should be affirmed with costs.
Saneoed, J., concurred.