STATE OF MISSOURI, TO THE USE OF THE CITY OF ST. LOUIS, Appellant, *v.* J. FRED. THORNTON ET AL., Respondents.

### November 11, 1879.

1. Where the statute makes it the duty of the circuit clerk to pay over to the county treasurer such sums of money as the Circuit Court may order, his failure to do so is a breach of his bond for the faithful discharge of his duties, and the sureties on his bond are concluded by the order of the court, without being parties thereto, and without notice of the proceedings preliminary to such order.

2. Where the law in force when the bond is executed directs a suit to be instituted on the bond upon a failure to obey the order within a specified time, this is a legislative declaration of original responsibility on the part of the sureties, who, in signing the bond, make the law a part of their contract.

APPEAL from the St. Louis Circuit Court.
*Reversed and remanded.*
LEVERETT BELL, for the appellant.

H. A. Clover, for the respondent, cited : *Goss* v. *Watlington*, 3 Brod. & B. 132 ; *Whitnash* v. *George*, 8 Barn. & Cress. 556 ; *Middleton* v. *Melton*, 10 Barn. & Cress. 317.

Lewis, P. J., delivered the opinion of the court.

This is a suit against the principal and sureties on the official bond of defendant Thornton as clerk of the St. Louis Circuit Court.   The condition of the bond is as follows : " Whereas the said J. Fred. Thornton has been duly elected clerk of the Circuit Court of St. Louis County, for the term of four years from and after the first Monday in January, 1875, and until his successor is duly elected and qualified : Now, if the said J. Fred. Thornton shall faithfully perform the duties of his office, and pay over all moneys which may come to his hands by virtue of his office, and that he, his executors, and administrators, will deliver to his successor, safe and undefaced, all books, records, papers, seals, apparatus, and furniture belonging to his office, then this obligation shall be void ; otherwise to remain in full force."

For breaches of the condition, it is charged that defendant Thornton has failed and refused to obey two certain orders of the St. Louis Circuit Court, as follows : " Now, at this day, it appearing to the court, from the statement of J. Fred. Thornton, clerk of the Circuit Court, duly qualified by his affidavit made to this court and filed herein, that during the year ending December 31, 1877, he received, as such clerk, official fees and emoluments amounting to the sum of $53,903.65 ; and it further appearing to the court that the sum of $38,936.69 is necessary for the payment of deputies and assistants and miscellaneous expenses in his office during said year, the court doth allow said sum, and doth find, after deducting his salary allowed by law, the sum of $3,541.66, and also the sum of $2,761.36, being in excess of expenditures in settlement of 1876, there remains a balance of $12,205.60 to be paid to the

treasurer of the city of St. Louis: it is ordered by the court, that J. Fred. Thornton, clerk of the Circuit Court, pay to the treasurer of the city of St. Louis, within fifteen days from the date hereof, the sum of $12,205.60, the amount of surplus fees found by the court to be in his hands for the year ending December 31, A. D. 1877, over and above his salary allowed him by law and the amount allowed him by the court for deputies and miscellaneous expenses in his hands during said year."

" Now, at this day, comes J. Fred. Thornton, clerk of the Circuit Court, and exhibits unto the court, in General Term, his statement, from which it appears that said Thornton, as said clerk, collected and now has in his custody the sum of $11,513.03, being fees earned and taxed in the office of the clerk of this court during the official term and occupancy of said office by John Lewis, which said fees were collected and received by said Thornton from January, 1875, to February, 1877, inclusive ; and it further appearing to the court that the suit instituted in this court on the eighth day of March, 1875, by said Thornton against the said John Lewis and Emil Thomas, then sheriff of St. Louis County, for the purpose of testing the right of the said Thornton, as said clerk, to collect the said fees, so earned during the term and occupancy of said office by the said Lewis, has been by the Supreme Court of this State decided in favor of the right of said Thornton to do so, the mandate in which case was filed in the office of this court on the seventeenth day of January, 1878 ; and it further appearing to this court that the said Thornton, by virtue of the said decision of the Supreme Court, is now at liberty to turn said fees, aforesaid, over to the proper authority authorized to receive the same ; and the court being further in all things advised in the premises : it is accordingly ordered that the said statement of the said fees, so collected as aforesaid, be filed and approved ; and the said J. Fred. Thornton is hereby directed to pay the said sum of $11,513.03 over to

the treasurer of the city of St. Louis, and that duplicate receipts of said treasurer be taken therefor, one of which shall be filed in the office of the clerk of this court and entered at large upon the records of this court in General Term, and the said remaining receipt shall be retained by the said J. Fred. Thornton ; and it is further ordered that the payment of said fees as above directed shall be made within fifteen days from the making of this order.''

At the trial, before a jury, the bond and the orders above recited were introduced in evidence. It was then proved that the defendant Thornton had never paid over the several sums of money, or any part thereof, as directed in the orders, and that the sworn statements of Thornton, recited therein, had become lost or destroyed, and could not be produced. Plaintiff then rested, and on motion of defendants the court instructed the jury that, as to the defendants, the sureties on this bond, there was not sufficient evidence whereon to base a verdict against them. Plaintiff took a nonsuit, with leave, etc.

In *Stoops* v. *Wittler*, 1 Mo. App. 420, the question was considered, under what circumstances .the sureties in an obligation will be concluded by a judgment against their principal. Reference is there made to *Stewart* v. *Thomas*, 45 Mo. 42, and to other cases in which the subject is presented in various aspects. The conclusion was reached that the sureties in that case were concluded, because they were at one time parties to the suit against their principal, and had full notice of the proceedings and opportunity to aid in the defence. The authorities reviewed are not harmonious, but the general inference is fair that in the absence of notice to the sureties, in most cases, a judgment against the principals will be, at best, but *prima facie* evidence of their liability. Such would seem to be the rule in cases where the judgment against the principal has ascertained the amount of damages sustained by the breach of the obligation. This will let the sureties in to defend against

the amount of damages recovered in the former suit, or to show that none were properly recoverable. But if the obligation of the sureties be to pay a judgment rendered in a specific litigation, or to do something dependent upon its result, the liability would be complete upon the rendition of the judgment or the happening of the result, unless this may be impeached for fraud or clerical error. *Stewart* v. *Thomas*, 45 Mo. 44. In *Bridgeport Insurance Company* v. *Wilson*, 34 N. Y. 280, the rule is stated thus : " Covenants to indemnify against consequences of a suit are of two classes : First, where the covenantor expressly makes his liability depend on the event of a litigation to which he is not a party, and stipulates to abide the result ; and, second, where the covenant is one of general indemnity, merely, against claims or suits. * * * In cases of the first class, the judgment is conclusive evidence against the indemnitor, although he was not a party and had no notice ; for its recovery is the event against which he covenanted. In those of the second class, the rule already stated applies, to wit : that the want of notice does not go to the cause of action, but the judgment is *prima facie* evidence only against the indemnitor, and he may be let in to show that the principal had a good defence to the claim."

In the act of March 30, 1874 (Sess. Acts 1874, p. 63), sect. 1 provides that in the county of St. Louis the clerk of the Circuit Court shall make and file, in the month of January of each year, in the Circuit Court, a statement, verified by his affidavit, of the amount of each fee received by him during the past year, from whom received and for what services, and give the name of each deputy or other person employed by him during the year, and the length of time each was employed and the amount of money paid to each.

The Circuit Court is required to examine the statement, and allow all necessary clerk-hire and the salary of the clerk as fixed by the act, and ascertain the excess in the

hands of the clerk, if any, and make an order directing the clerk to pay the same into the county treasury, etc.

By sect. 3 it is made the duty of the clerk, within fifteen days after the order is made, to pay into the county treasury the amount of money so ordered to be paid; and if the clerk fails to do so, the County Court is required immediately to cause suit to be commenced on the official bond of the clerk for the amount of money, with interest, etc.

It is thus made the official duty of the clerk, not merely to pay over general balances which may remain in his hands, but to pay into the county treasury the specific sum which the Circuit Court shall have ordered to be paid. This leaves nothing to be ascertained in a suit for damages against the clerk, which might be litigated over again in a suit against sureties. If the sureties had covenanted for no more than that the clerk should "pay over all moneys" which might come to his hands by virtue of his office, there might be grounds for asserting that the sureties would be entitled to notice, or else would not be concluded by any proceeding which should undertake to ascertain and adjudge the amount that had so come to his hands. But they have also covenanted that their principal should "faithfully perform the duties of his office." This is, in effect, an undertaking that he should obey the order of the Circuit Court, made under the statute, as above shown. Such obedience is the specific event for which they have covenanted. They were therefore, according to the principles already stated, not entitled to notice of the proceedings preliminary to the order, and are concluded by the order itself, without having been parties thereto.

It is not necessary, however, to a reversal in this case that the sureties be held concluded by the order of the Circuit Court. The authorities are pretty uniform to the effect that such orders or judgments are at least *prima facie* evidence against the sureties. *Bridgeport Ins. Co.* v. *Wilson, supra; The State, to use, etc.,* v. *Jennings,* 14 Ohio St. 73.

In England it has been held that the mere entries of a deceased tax-collector, in a public book, of the sums received by him were *prima facie* evidence against his sureties for the faithful performance of his official duties. *Goss* v. *Watlington*, 3 Brod. & B. 132 ; *Whitnash* v. *George*, 8 Barn. & Cress. 556 ; *Middleton* v. *Melton*, 10 Barn. & Cress. 317. In the present case, the court below denied to the Circuit Court orders on the clerk even the efficacy of *prima facie* evidence.

It is worthy of remark that the statute above mentioned directs a suit on the official bond of the clerk if he fails to obey the orders of the court within fifteen days. This amounts to a legislative declaration of original responsibility in the sureties, attaching *instanter* upon the clerk's failure to obey within the time prescribed. The law was in force when the bond was executed. The sureties, in signing it, made the law a part of their contract.

It may be suggested that the court orders were not judgments in the technical sense. It is wholly immaterial whether they were so or not. If they were ministerial acts, the case is no better for the sureties ; since the orders were specifically directed by law, and obedience to them by the clerk was made an official duty. The judgment is reversed and the cause remanded. All the judges concur.