Decided 3 June, 1902.

## CARROLL v. NODINE.

[69 Pac. 51.]

NOTES—IMPLIED WARRANTY UPON INDORSEMENT WITHOUT RECOURSE.

1. The indorsement of a promisory note without recourse carries an implied warranty by the seller that it and the previous indorsements on it are genuine, and is intended, like a delivery, to carry title, but such an indorsement is not a contract.

PAROL EVIDENCE—INDORSEMENT WITHOUT RECOURSE.

2. An unqualified indorsement of negotiable paper is a written contract excluding parol evidence to vary its terms, while an indorsement without recourse is not a contract, but merely operates to transfer the title; and hence parol evidence is admissible to show that at the time of the transfer of a note by indorsement without recourse the buyer agreed to take the paper at his own risk, absolutely relieving the indorser even from the implied warranty of genuineness attending such a transfer.

SUFFICIENCY OF NOTICE TO INDORSEE AS INDEMNITOR.
3. The purchaser of a note sued the maker, who defended on the ground that an indorsement of payment appearing on the note was not genuine, and that without this payment the note was barred by limitation. The seller of the note, who had indorsed without recourse, agreed at the time of the sale to appear as a witness for the purchaser in case he sued on the note, and did so appear, though notified of the pendency of the suit only a few hours before taking the witness stand. She was not asked to assume or assist in the defense. *Held,* that the notice was nevertheless sufficient to make the judgment in the suit binding on her.

From Union: ROBERT EAKIN, Judge.

This is an action by W. T. Carroll to recover from Eliza Nodine upon an implied warranty on the sale without recourse by defendant to plaintiff of a certain promissory note made and executed by Louisa A. Hudson and Thomas R. Hudson to Fred Nodine on August 21, 1878, for the sum of $150, with interest at 10 per cent per annum, and by the latter indorsed to the defendant. The note was secured by a mortgage upon real property in the City of Union, Oregon. Several payments were indorsed thereon, including one of $7, of date October 25, 1893. The complaint contains appropriate allegations showing that suit was subsequently commenced to foreclose, and the defense interposed that the $7 indorsement was not a genuine payment, by reason whereof the statute of limitations had run against the note. The answer sets up, among other things, that, at the time the defendant sold and indorsed the note to plaintiff, he was fully informed of all matters concerning the credit made thereon of date October 25, 1893, and that the same was a valid and genuine payment; that he then guarantied that she should never at any time be held liable upon said note in any capacity, or for any part thereof; and that her indorsement of said note without recourse would, and in fact did, forever relieve and protect her from all liability thereon. The case went to trial upon the issues thus tendered, with others, and, plaintiff having recovered judgment, the defendant appeals.        REVERSED.

For appellant there was a brief and an oral argument by *Mr. Leroy Lomax.*

For respondent there was a brief over the names of *C. E. Cochran,* and *Thos. H. Crawford,* with an oral argument by *Mr. Crawford.*

MR. JUSTICE WOLVERTON, after stating the facts, delivered the opinion of the court.

There are but two errors relied upon for reversal. It is first contended that the plaintiff, at the time he purchased the note, agreed and guarantied that the defendant should never be held liable thereon in any capacity, and that such an agreement constitutes a valid defense to the action. The question arose upon an attempt to prove the express warranty set up in the answer by parol, which the court refused to permit, under the idea that the contract, being in writing, could not be thus varied. The theory of the plaintiff is that the indorsement of the note fixes and determines the relation of the parties to the transfer,—that is, imports a contract in writing between them,—and that, like other contracts of the kind, cannot be varied or controlled by a contemporaneous verbal agreement, as it is presumed that the whole understanding of the parties has been incorporated in the writing. The case of *Smith* v. *Caro,* 9 Or. 278, and other cases of like nature, are relied upon in support of the contention. In the case cited the indorsers simply wrote their names upon the back of the note; and the court held that by the law merchant the indorsement imported a contract in writing, which served not only as a means of transfer, but to fix and determine the liabilities of the indorsers, and that it was not competent to vary the contract by any parol agreement that might have been entered into at the time.

1. The liabilities of an ordinary or unqualified indorser are upon the instrument indorsed, conditioned upon demand and notice; but where the transfer is by indorsement without recourse, or by delivery, the vendor's liabilities arise from the fact or contract of sale, and not upon the paper. The purpose of such an indorsement, like delivery, without indorsement, is simply to carry title to the purchaser, without alone importing

a contract: 4 Am. & Eng. Ency. Law (2 ed.), 475. The authorities are in unison, however, that where a note is thus transferred there is an implied warranty by the seller that it is what it purports to be, and, as applied to the exigencies of this case, that no payments have been made, except those that appear to have been indorsed thereon, and that such as so appear are genuine, and operate to continue the obligation in force as against the statute of limitations: *Bank* v. *Smiley,* 27 Me. 225 (46 Am. Dec. 593); *Society* v. *Giddings,* 96 Cal. 85 (30 Pac. 1016, 31 Am. St. Rep. 181); *Hannum* v. *Richardson,* 48 Vt. 508 (21 Am. Rep. 152). There is an intimation in a note to *Drennan* v. *Bunn,* 7 Am. St. Rep. 354, 366 (124 Ill. 175, 16 N. E. 100), that the general rule that oral evidence is inadmissible to change the contract of indorsement relates to restrictive indorsements, also, and, extended, it applies to indorsements without recourse. The authorities referred to, however, as sustaining the principle, go to the proposition that it cannot be shown by parol that an unqualified indorsement was made for the sole purpose of transferring the title, and that it was agreed at the time that the words ''without recourse'' should be written over it. This, it appears to us, is coming back to the same question.

2. An indorsement without recourse is a very different thing from an unqualified indorsement; and it would be just as objectionable to show an agreement by parol that the vendor should be relieved of all liability on the instrument, as it would be that the vendor agreed to waive demand and notice, which was the case of *Smith* v. *Caro,* 9 Or. 278. In either case there is a variance of the contract which the unqualified indorsement imports. We have been unable to find any case covering the exact point here. Where an article of personalty in the vendor's possession is sold and delivered to another, and nothing is said, there goes along with the contract an implied warranty of title, and a failure thereof renders the vendor liable. The implied warranty attending the sale of commercial paper arises upon like principle: *Hannum* v. *Richardson,* 48 Vt. 508 (21 Am. Rep. 152). It will hardly be disputed that the ven-

dor of personalty may by verbal understanding or agreement
limit the liability under the implied warranty of title, and
thereby make the transfer entirely at the purchaser's risk; and
why should not the same principle govern as to the sale and de-
livery of commercial paper, where the indorsement merely op-
erates to transfer the title?    And to carry the reasoning a little
further, there is no implied warranty by a sale and simple de-
livery of the paper, or by indorsement without recourse, of the
solvency of the maker or other person liable for its payment;
but we take it to be unquestioned now that the vendor may, by
express verbal agreement, warrant the solvency of such par-
ties, and thereby render himself directly liable in case of their
default in payment.    The statute of frauds does not stand in
the way of such an agreement: *Milks* v. *Rich,* 80 N. Y. 269 (36
Am. Rep. 615); *White* v. *Webster,* 58 Ind. 233.    So that it
may be deemed competent for the vendor to verbally enter into
an express warranty with relation to the paper in connection
with the transfer of the title, and the only question that re-
mains is whether it is superseded by the contract which the
mere delivery or indorsement without recourse implies.    But
we have seen that such an indorsement does not constitute a
contract in writing, and serves merely to transfer title, as in
the case of delivery when payable to bearer.    In *Smith* v.
*Corege,* 53 Ark. 295 (14 S. W. 93), the vendor, by verbal
agreement, expressly warranted that the paper transferred by
delivery was good, and hence not tainted with usury; and the
court permitted the establishment of the agreement against an
objection that it was contrary to the statue of frauds.    Now,
if it be permissible to show by parol an express warranty that
the paper is not usurious, or that the makers are solvent, why
is it not equally competent to show by parol that the purchaser
agreed to take the paper at his own risk, absolutely, and thus
relieve the vendor of all liability of whatsoever nature that
ordinarily attends the sale and transfer by such methods where
nothing is said to vary the effect of the transaction?    Logically
there is but one answer to the question, which is that the ver-

bal agreement may be shown, and we are constrained to so hold.

3. This entails a reversal of the judgment, without more; but the other question presented will again arise on a retrial, and may induce another appeal, hence we deem it important that we should pass upon it now. After the indorsement and transfer of the note, the plaintiff sued the makers, and the defendant here was a witness on the trial. She appeared at the request of the plaintiff made on the same day, and but a few hours previous to taking the stand. This was the first knowledge she had of the pendency of the suit, no request having been made that she assist in or take charge of the defense; nor was she notified in any manner that she must assume the responsibilities thereof. It developed on her cross-examination that she agreed with the plaintiff at the time of the sale and transfer of the note and mortgage to be a witness for him in case suit should be brought against the makers. Now it is contended by defendant that the decree obtained in that suit was not admissible against her in this action, because she was not given adequate and proper notice of the pendency thereof, and required to assume the burden of the defense. The contention proceeds upon the hypothesis that the defendant is an indemnitor, dependent upon the finding of the jury as to the agreement, and her consequent liability attending the sale of the note and mortgage. As indemnitor, the primary liability for the loss incurred by a failure to prove that the $7 payment was genuine, and entitled to rightful and lawful indorsement upon the note, rested upon her. Such a relation brings her into privity with the purchaser, the party to be indemnified; and she, as well as the plaintiff, had a direct interest in defending the suit. But before an indemnitor can be expected to defend, he must have reasonable notice of the pendency of the suit or action by which he is to be bound, and afforded an opportunity to participate in or interpose such defense as he may desire; and it is only by complying with such conditions that the party to be indemnified can estop the indemnitor to

controvert the matter anew upon an action against him upon the indemnity contract or obligation. Of course, the suit or action that works the estoppel must have been prosecuted without collusion or fraud, as it affects the indemnitor. While notice of the pendency of the suit or action is always necessary to render the decree or judgment binding upon the indemnitor, the better reason and the weight of authority dispense with any request to take charge of or assume the responsibilities of the defense. Having notice, the indemnitor may, as it is his right, interpose and make such defense as to him might seem most expedient and effective; and, if he did nothing in that direction, it must be considered a matter of his own volition, and a request for him, coupled with a warning of consequences, to do that which duty and interest require him to do, would seem superfluous, and the law, which is founded upon reason, does not require a vain thing.

The question thus recurs whether defendant had reasonable notice, or such under the circumstances attending the controversy as required her to defend or abide the consequences. The notice given her was of very short duration, and we are not prepared to say that it would have been sufficient ordinarily, but she actually attended as a witness, and gave evidence on trial; and, what is of far greater consequence, and a circumstance of decisive moment, she agreed at the time she sold the note to testify in the case, if called upon; thus anticipating a suit at the time, and impliedly indicating her willingness that plaintiff should conduct the defense in her behalf, and that she would aid him by her testimony, if desired. The circumstances are such as to make the decree binding upon her. In support of these views, see *Giffert* v. *West*, 33 Wis. 617; *Daskam* v. *Ullman*, 74 Wis. 475 (43 N. W. 321); *Davis* v. *Smith*, 79 Me. 351 (10 Atl. 55); *City of Boston* v. *Worthington*, 10 Gray, 496 (71 Am. Dec. 678); *City of Chicago* v. *Robbins*, 67 U. S. (2 Black) 418; and *Robbins* v. *City of Chicago*, 71 U. S. (4 Wall.) 658.

The ruling of the trial court as to this latter contention was

therefore correct, but, for error as to the first, the judgment will be reversed, and the cause remanded for such further proceedings as many seem appropriate. REVERSED.

Decided 3 June, 1902.