Argued June 2, reversed June 29, rehearing denied September 14, 1915.

# UNITED STATES FIDELITY CO. *v.* MARTIN.

(149 Pac. 1023.)

**Appeal and Error—Findings—Conclusiveness.**

1. Findings are conclusive on appeal, unless the court finds that there is no evidence to support them.

**Judgment—Conclusiveness—Former Adjudication.**

2. A defendant in an action in a court of a sister state procured from a surety company a bond for the release of property attached by plaintiff therein. A third person executed to the surety company an indemnity bond conditioned on saving it harmless against all suits, actions, debts, damages, charges and expenses. Plaintiff in the action recovered judgment subsequent to his agreement to dismiss, in consideration of a payment in full settlement by defendant who had no knowledge of the trial. The third person had notice of the trial and participated therein. *Held* that, under the full faith and credit clause of the Constitution, the judgment was conclusive against the third person on his bond to indemnify the surety company satisfying the judgment, though the third person sought to show that under the laws of the sister state a new trial could be had against a judgment obtained by fraud or surprise, and that the surety company refused to take any action to obtain a new trial.

**Payment—Receipt—Effect.**

3. A receipt is only *prima facie* evidence of its statements.

**Evidence—Parol Evidence—Contracts—Consideration.**

4. Under Section 798, subdivision 3, L. O. L., providing that the truth of facts recited in a written instrument is conclusively proved

77 Or.—24

as between the parties thereto, but this rule does not apply to the recital of a consideration, a consideration expressed in a writing may be inquired into.

[As to when and how consideration must be expressed, see note in 60 Am. St. Rep. 432.]

Judgment—Foreign Judgment—Conclusiveness.

5. Under the full faith and credit clause of the federal Constitution and Section 761, L. O. L., providing that the effect of a judicial record of a sister state is the same in this state as in the sister state, the court may inquire whether a court of a sister state rendering a judgment relied on had jurisdiction of the parties and of the subject matter, but beyond that it cannot go.

From Multnomah: WILLIAM N. GATENS, Judge.

In Banc.    Statement by MR. JUSTICE BURNETT.

This is an action by the United States Fidelity & Guaranty Company, a corporation, against G. F. Martin and C. A. Sheppard. The record discloses the following state of facts:

The plaintiff, a Maryland corporation authorized to operate in Oregon, avers substantially that the defendants applied to it to furnish a redelivery bond to secure the release of property attached in an action in the Superior Court of Clarke County, Washington, wherein E. M. Meach was plaintiff and C. Schley, trading as Vancouver Bill Posting Company, and S. S. S. Realty Company, was defendant. It furnished the bond and at the time, as part of the same transaction, took from the defendants here an indemnity bond in the sum of $1,550, which recited the terms of the redelivery undertaking and stated its own conditions as follows:

"Now the condition of the above obligation is such that if the above-bounden indemnitors, their executors or administrators, shall at all times hereafter save harmless and keep indemnified the said United States Fidelity & Guaranty Company, its successors and assigns, against all suits, actions, debts, damages, costs,

charges and expenses, including court costs and counsel fees at law or in equity, and against all loss and damages whatever, that shall or may at any time hereafter happen or accrue to the said United States Fidelity & Guaranty Company, its successors or assigns, for or by reason of the suretyship of the said United States Fidelity & Guaranty Company, as aforesaid, or any continuation thereof, then this obligation to be void and of no effect, otherwise to be and remain in full force and virtue in law.

"And in order further to secure and indemnify the said United States Fidelity & Guaranty Company from and against any loss and expense that may occur and accrue to it because of the execution of the said bond, and as part of the consideration thereof, the said indemnitors do hereby authorize and empower any attorney of record, of this state or of any other state, named or to be named by the said United States Fidelity & Guaranty Company, to appear for them at any time after as well as during any term of court, and after as well as during office hours, and in their name to confess and have entered up a judgment against them in any court of this or of any other state of the United States or in any court of this province or of any other province of the Dominion of Canada, in favor of the said United States Fidelity & Guaranty Company for the sum of $1,550."

The complaint further narrates the recovery of judgment in the Washington action on September 11, 1911, in favor of the plaintiff and against the defendant in the sum of $737.26; that the defendants refused to pay it after repeated demands by the plaintiff to that end, in consequence of which the plaintiff was compelled to and did pay the same on July 3, 1912, in principal, interest, and costs, the full amount of $772.15. Further demands upon the defendants for reimbursement are alleged, and it is said that by reason of the default of the defendants the plaintiff has

been compelled to prosecute the action at an additional expense of $75 for attorney's fees. The primary pleading concludes with a demand for judgment for $847.15, with interest on the amount paid in satisfaction of the Washington judgment from the date of payment.

Denying most of the allegations of the complaint except as afterward qualified, only the defendant Sheppard answered. He admitted the execution and delivery of both the redelivery bond and the indemnity bond as stated in the complaint. He says that, after the release of the attached property by virtue of the bond executed by the plaintiff, the parties to the Washington action made a complete settlement of the same as evidenced by the following writing:

"Portland, Oregon, January 19, 1911.

"Received from the Northwest Bill Posting Company four hundred sixty-five and 50–100ths ($465.50) dollars in full settlement of all claims to date for which amount I agree to dismiss the suit now pending in the Superior Court of the state of Washington, for the county of Clarke, in which I am plaintiff and C. Schley and the Northwest Bill Posting Company is defendant.

"E. M. MEACH."

He charges that afterward the plaintiff in that action refused to dismiss the same, but brought it on for trial and secured the judgment already mentioned in violation of his agreement. The defendant states that after the rendition of the judgment and demand made upon the plaintiff here for its liquidation, and it had called upon him to pay the same, he informed the plaintiff of the agreement and that said judgment had been wrongfully and unlawfully obtained in violation thereof; that the plaintiff there was not entitled to the judgment in question, and that it was illegal and void

and of no force and effect; that he notified the plaintiff on those grounds that it was his intention to institute a suit in the name of the plaintiff corporation for the purpose of having the judgment set aside. He further says that:

He "at that time presented to this plaintiff a petition prepared by counsel who had been employed by this answering defendant setting up facts which showed fraud upon the part of the said E. M. Meach, and facts sufficient to have warranted said court in setting aside said judgment against the said C. Schley and this plaintiff and facts sufficient to properly advise this plaintiff of the truth of all of the statements contained in said complaint, and requested this plaintiff, through its proper officers, to cause said complaint to be verified. * * "

He also avers that:

"If said suit had been permitted to have been instituted and carried on, the same would have been successful, and that said judgment would have been set aside and held for naught, and this plaintiff would not have been liable for or been compelled to pay said judgment or any part thereof."

In brief, the answer does not complain of anything which the plaintiff here did or refused to do in the Washington action; but the essence of the affirmative answer is that the plaintiff declined to allow the use of its name by the defendant Sheppard in the prosecution of a new and independent suit to set aside the Washington judgment which it was compelled to pay.

The reply traversed the allegations of the answer in material particulars and averred, in substance, that the laws of Washington provide for a new trial of an action as against a judgment obtained by fraud or surprise in the manner alleged by the answer and for an appeal within three months from the final decision of

an action, and that neither the defendant therein nor the defendants here took any steps to avail themselves of the prescribed procedure in that respect in that state; that, after the time for taking such appeal had elapsed, the present defendants instituted an original suit in their own name in the Superior Court of Clarke County, Washington, for the purpose of setting aside the judgment on the grounds which the defendant Sheppard here alleges; but that the same was decided adversely to them and that it was not until execution issued upon the judgment that the plaintiff here had paid the same. The Circuit Court heard this case without a jury, and after keeping it under advisement for some months adopted findings of fact and conclusions of law submitted to it by the plaintiff. These findings and conclusions are a substantial copy of the material allegations of the answer omitting charges of fraud and collusion on the part of plaintiff which were practically abandoned at the trial. The plaintiff propounded findings in its favor which were rejected by the court. A judgment was rendered for the defendants and the plaintiff appeals.

Reversed. Rehearing Denied.

For appellant there was a brief over the name of *Messrs. Beach, Simon & Nelson,* with an oral argument by *Mr. Roscoe C. Nelson.*

For respondent, C. A. Sheppard, there was a brief over the name of *Messrs. Sheppard & Brock,* with an oral argument by *Mr. Robert J. Brock.*

Mr. Justice Burnett delivered the opinion of the court.

If we should concede that the defendant had a right to demand of the plaintiff that it commence in its own

name an independent suit to set aside the judgment which it afterward paid, still the answer of the defendant describing the petition he presented only states a conclusion of law.   On the hypothesis that the plaintiff was compelled to accede to his request to commence a suit, he should have set forth the facts presented in the petition, so that the court here could determine as a matter of law whether or not the plaintiff was remiss in its duty to him in refusing to adopt the complaint presented.   For all that appears in the answer, the complaint which he desired the plaintiff to subscribe was wholly insufficient for the purpose designed and would only have involved the plaintiff in further complications.

1, 2. Passing this point, however, we approach what we deem the vital question in the case, which is the force and effect of the Washington judgment.   We remember that the findings of fact in the case are conclusive upon appeal unless the court on examination of the record contained in the bill of exceptions discerns that there is no evidence to support the findings.   The first assignment of error is based upon the contention that the finding to the effect that the Washington action was settled before judgment therein was without foundation in the testimony.   The proceedings of the Washington court in the action in question are in the record before us.   They include the pleadings, the findings of the court, and the judgment.   The complaint is for labor, capital, goods, wares and merchandise furnished by the plaintiff to the defendant between certain dates amounting to $767.67, and alleges that no part of the same has been paid.   The amended answer consists of a denial of the complaint, and a further and separate defense alleging the settle-

ment of the action after the commencement thereof and the execution of the writing already mentioned and counted upon by the defendant as a defense in the case at bar. The reply, after denying the allegations of the amended answer, further points out that the settlement had nothing to do with the defendant; that the plaintiff never at any time had any transactions with the Northwest Bill Posting Company, nor did he bring an action against that institution. It further avers that the plaintiff had a compromise agreement with, one Sheppard, the answering defendant here, wherein the latter agreed to pay the plaintiff $465 in March of the year 1911, together with all outstanding bills in Vancouver, Washington, against the defendant in that action; and that the plaintiff agreed that the action in question should not be prosecuted at that time but should remain until March, 1911, when, if the compromise agreement had not been carried out by Sheppard, the plaintiff should proceed to judgment in the action. The record of the trial in the Washington court recites that the cause came on to be heard on its merits; that the plaintiff appeared in person and by his attorney, George B. Simpson, that the defendant appeared by his attorney, J. B. Stapleton; and that after hearing the testimony of witnesses and argument of counsel for both parties the court made findings of fact. It is sufficient to say of these that they were favorable to the plaintiff in the action; that the redelivery bond had been executed by the plaintiff here; and, as to the settlement based upon the receipt already quoted, the finding is thus:

"That the receipt signed by the plaintiff and admitted herein as evidence is not conclusive and was contradicted and entirely discredited by the oral evidence of the plaintiff, and that said receipt was only

accepted in settlement, upon condition that it be paid at maturity, and the other bills mentioned in plaintiff's complaint be settled, which conditions have not been met."

Upon these findings of fact the court entered conclusions of law to the effect that the plaintiff should have judgment against the defendant for $666.26, with interest amounting to $32.19, together with his costs, and should also have judgment against the plaintiff here as surety on the redelivery bond in the sum already stated. The judgment was entered accordingly against the defendant in the action and this plaintiff as surety on the redelivery bond.

It is written large throughout the pleadings and evidence in this case that the defendant Sheppard had notice of the pendency of the action and that he applied to the plaintiff for the redelivery bond to be used in that litigation. In furtherance of his undertaking to save this plaintiff harmless on its stipulation, he procured the receipt upon which he relies. It appears in evidence without dispute out of his own mouth that prior to the trial of the action he was notified by the attorney of record for the defendant that the action would be brought to trial. He testifies that he furnished to the counsel for the defendant there the writing already quoted, signed by Meach. The record shows that the answer was amended and the question of settlement raised upon the writing; that the defense was interposed based upon that instrument; that the identical proposition upon which the defendant here relies was litigated in the Washington court, where both parties were represented by their attorneys of record; and that the decision of that tribunal to which the parties submitted themselves was adverse to the

contention of the defendant here. What, then, is the effect to be given to that judgment upon the question of settlement? The answer is found in Section 1 of Article IV of the Constitution of the United States:

"Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state."

3, 4. On the question involved, namely, whether or not the action had been settled, the judgment of the Washington court having jurisdiction of the persons and of the subject matter is conclusive as against anything here alleged by the defendant. To uphold the defense in face of such a record is to discredit the judicial proceeding of a sister state. It is hornbook law that a receipt is only *prima facie* evidence of its statements. It is equally primary learning that the consideration expressed in a writing may be inquired into: Section 798, L. O. L., subd. 3. It is not necessary to further speculate on the reasons underlying the decision of the Washington court on this point, for we can well surmise that there was evidence before it, not only qualifying the terms of the settlement, but also the consideration upon which it was supposed to have been based. The instrument upon which he relies cannot be allowed to discredit the judicial determination of the Washington court. Such a holding would be in direct contravention of the mandate of the national Constitution already noted. It would be to uphold a private writing in the very face of a judicial record condemning it. The resulting situation, therefore, is that, on the record presented, the court of trial in the instant case could not lawfully reach any other conclusion except that the action had not been settled as claimed by the defendant Sheppard. The neces-

sary deduction is that there was no evidence to sustain the finding of our Circuit Court to the contrary.

As before stated, it is unquestioned in the testimony that the defendant Sheppard had notice of the pendency of the Washington action from its conception; that he knew that the same was to be brought to trial; that to a certain extent he availed himself of the opportunity to interpose his defense; and that it was pleaded there.   He states in his testimony that, having furnished the data to the counsel for the defendant in that action, he himself went away to another point in that state to attend to some other litigation, and hence was not present at the trial; but he does not pretend that he was lured away by any action of the plaintiff here.   Having notice of the pendency of the action and that it would be brought to trial and being in position to urge the defense and to carry out the terms of his bond to save the plaintiff harmless, he is bound by the resulting judgment against the plaintiff here.   In *Carroll* v. *Nodine,* 41 Or. 412 (69 Pac. 51, 93 Am. St. Rep. 743), the only notice given to the defendant indemnitor of the pendency of the action was that she was called as a witness and attended at the trial resulting in the judgment against her indemnitee, and it was there held that she was sufficiently vouched to make the judgment conclusive upon her.   Again, in *Astoria* v. *Astoria & Columbia Riv. R. Co.,* 67 Or. 538 (136 Pac. 645, 49 L. R. A. (N. S.) 404, 5 N. C. C. A. 442), this court held that, where the indemnitor has notice of the action and an opportunity to urge the defense, the judgment in that action is conclusive of the facts thereby established and cannot again be the subject of litigation between the indemnitor and the indemnitee.   Mr. Justice McNARY, who wrote the opinion, adopts the follow-

ing language in *Oceanic Steam Nav. Co.* v. *Campania Transatlantica Espanola,* 144 N. Y. 663 (39 N. E. 360):

"It is sufficient that the party against whom ultimate liability is claimed is fully and fairly informed of the claim and that the action is pending with full opportunity to defend or to participate in the defense. If he then neglects or refuses to make any defense he may have, the judgment will bind him in the same way and to the same extent as if he had been made a party to the record."

In *Bridgeport Fire & Marine Ins. Co.* v. *Wilson,* 34 N. Y. 275, the rule is thus stated:

"(1) Where the covenantor expressly makes his liability depend on the event of a litigation to which he is not a party, and stipulates to abide the result; and (2) where the covenant is one of general indemnity merely, against claims or suits. * * In cases of the first class, the judgment is conclusive evidence against the indemnitor, although he was not a party, and had no notice, for its recovery is the event against which he covenanted."

The court goes on to hold, however, that in cases of the second class, where the indemnitor had notice of the pendency of the action and had opportunity to urge his defense, he is bound by the result of the litigation. Again, in *Village of Port Jervis* v. *First National Bank,* 96 N. Y. 550, it is said:

"But if the party who is ultimately responsible has notice of the pendency of an action against his indemnitee and is given an opportunity to defend, and neglects it, he is still bound by the result of the action and estopped from controverting in an action subsequently brought against him by such indemnitee the facts which were litigated in the original action."

In cases of the first class mentioned in *Bridgeport Ins. Co.* v. *Wilson,* the reason for notice failed, and

the necessity therefor is obviated. This is applicable to the instant case in the following manner: The answering defendant assumed responsibility to the plaintiff for the result of the action in which it furnished the indemnity undertaking. He agreed to protect it from that particular action, and he is bound by his agreement irrespective of notice because he had notice from the beginning of the very proceeding against which he guaranteed the plaintiff. He subsequently assumed to intermeddle in the litigation. In a way he assumed the disposition of that action, and, having put his hand to the plow, he was bound not to turn back, but to continue his efforts to a successful conclusion. It is not pretended in his pleadings that he gave the plaintiff any notice of his transaction with Meach or of his settlement of the controversy until after rendition of the judgment. The plaintiff is not to blame if the labors of the defendant proved abortive. Moreover, the fact that the plaintiff, as he himself testifies, had notice of the purpose to bring the action to trial after the alleged settlement, puts him in the second class mentioned in *Bridgeport Ins. Co.* v. *Wilson;* and on account of that notice the judgment is conclusive upon him from any point of view. In brief, having undertaken to save the plaintiff harmless from the result of a designated action, it was incumbent upon the defendant from the beginning to accomplish that result. Not having done so, he is liable upon his obligation. The following precedents illustrate the doctrine more fully: *Chamberlain* v. *Preble,* 11 Allen (Mass.), 370; *Rapelye* v. *Prince,* 4 Hill. (N. Y.) 119 (40 Am. Dec. 267); notes to *Ballentine* v. *Fenn,* 40 L. R. A. (N. S.) 698, 723, and *Baltimore & O. R. R. Co.* v. *Howard County,* 40 L. R. A. (N. S.) 1172; *Chicago* v. *Robbins,* 67 U. S.

(2 Black) 418 (17 L. Ed. 298); *Robbins* v. *Chicago,* 71
U. S. (4 Wall.) 657 (18 L. Ed. 427); *Mayor* v. *Brady,*
151 N. Y. 611 (45 N. E. 1122); *Portland* v. *Richardson,*
54 Me. 46 (89 Am. Dec. 720); *Great N. Ry. Co.* v. *Akeley,*
88 Minn. 237 (92 N. W. 959); *Daskam* v. *Ullman,* 74
Wis. 474 (43 N. W. 321); *Davis* v. *Smith,* 79 Me. 351
(10 Atl. 55); *Woodworth* v. *Gorsline,* 30 Colo. 186 (69
Pac. 705, 58 L. R. A. 417); *Lovejoy* v. *Murray,* 3 Wall.
1 (18 L. Ed. 129); *Seattle* v. *Regan,* 52 Wash. 262 (100
Pac. 731, 132 Am. St. Rep. 963); *American Bonding
Co.* v. *Dufur,* 49 Wash. 632 (96 Pac. 160). In 38
Albany Law J. 507, there is an exhaustive and able
discussion of this question by Judge CORLISS, formerly
of the Supreme Court of North Dakota, but now of
the bar of this state.

5. Besides all this, by the other terms of his bond the
defendant might be held to have waived all control over
litigation of the question involved when he authorized
the plaintiff to select any attorney of record to con-
fess judgment against him on his liability; but upon
this point we make no decision. In brief, we conclude
that the judgment of the Washington court was con-
clusive upon the defendant as to the amount and fact
of his liability to the plaintiff; that he cannot again
litigate the matter of settlement of the action either
directly or indirectly; and that as against that judg-
ment he has no right to demand that the plaintiff here
even nominally institute an independent suit to again
litigate the questions there involved. He had free rein
to operate in the proceedings in the action before the
Washington court, and indeed took some measures
there to prevent the judgment that ensued, but without
avail. It is clear, and is not controverted, that nothing
more can be done directly in the prosecution or defense

of that action.   The judgment there ripened into a finality, and the plaintiff here was compelled to pay it. Our statute, expressing the doctrine of the full faith and credit clause of the national Constitution, says in Section 761, L. O. L.:

"The effect of a judicial record of a sister state is the same in this state as in the state where it was made."

Final there, it is final here.   We can inquire whether that tribunal had jurisdiction of the parties and of the subject matter, but further than that we cannot go. When these conditions appear, we must accept the determination of that court as conclusive without further inquiry.   Such is the teaching of *Foshier* v. *Narver,* 24 Or. 441 (34 Pac. 21, 41 Am. St. Rep. 874).   There the defendant was served with summons in Iowa in an action pending in a court in that state for the recovery of money due upon a promissory note.   He suffered judgment to go against him there by default.   An action to recover the amount of the judgment was instituted against him in Oregon.   It appeared from the record that the Iowa court had jurisdiction of him and of the subject matter of the action, and he was denied the right to show in the court here that he had never signed the note; that he was not responsible for the instrument or the debt it represented; and that it was subscribed by a different person.   The judgment was held to be conclusive even against the facts he offered to prove.   The case of *De Vall* v. *De Vall,* 57 Or. 128 (109 Pac. 755, 110 Pac. 705), enunciates the same principle.

Having covenanted to save the plaintiff harmless from any judgment in the action wherein at his request it became a surety, the defendant formulated a plan,

in the shape of the receipt mentioned, which he thought would effect the desired result, all without the knowledge of the plaintiff. At his instance that paper was pleaded in the action mentioned, and the matter was fully litigated with a result adverse to his contention. Having exhausted his resources in that case, he now urges that he is exonerated because this plaintiff did not inaugurate new and independent litigation on security of his choosing. In short, for his undertaking to the plaintiff he would substitute the agreement expressed in the Meach receipt without the knowledge of the plaintiff and would compel the latter to enforce it after he had failed. To countenance the defendant's contention in the face of the judgment of the Washington court would be to say:

"We will not give faith or credit to that determination until we first shall have examined into what we assume to be the merits of the controversy there and ascertained for ourselves whether the decision is such as we would have rendered under the same circumstances."

We are forbidden to do this by the national Constitution, as well as by section 761, L. O. L. The Circuit Court was in error when it discredited the judgment of the court of a sister state in favor of the writing upon which the defendant depends; especially when it was before that court for consideration in that very action upon the contention here urged.

The decision of the Circuit Court is reversed and the cause remanded, with directions to that court to enter a judgment in favor of the plaintiff according to the prayer of the complaint.

REVERSED. REHEARING DENIED.

MR. JUSTICE BEAN delivered the following dissenting opinion.

I am unable to concur in the majority opinion.

This is an action upon an indemnity contract. The cause was tried by the court without the intervention of a jury. Findings of fact were made and a judgment rendered in favor of defendant C. A. Sheppard, from which plaintiff appeals. Defendant G. F. Martin made no defense.

The facts and circumstances of the case are nearly all detailed in the findings of the trial court, the substance of which is as follows: The plaintiff is a Maryland corporation authorized to do business in Oregon. On December 2, 1910, one E. M. Meach had instituted an action in the Superior Court of Clarke County, Washington, against one C. Schley, doing business as the Vancouver Bill Posting Company and the S. S. S. Realty Company, to recover $767.67, and caused a writ of attachment to be issued and levied upon his property. Schley made application to the plaintiff to execute a bond in the sum of $1,536 conditioned that Schley would pay any judgment that might be rendered against him in the action, for the purpose of having the property released from the attachment. The bond was executed and the property released by the sheriff. At the time the plaintiff company signed the bond, C. A. Sheppard and G. F. Martin executed to it an indemnity agreement indemnifying and holding it harmless from any liability upon the bond signed as surety for Schley. On January 19, 1911, the defendant Schley made a full and complete settlement of the action with plaintiff E. M. Meach and by the terms thereof agreed in writing to cause it to be dismissed. The agreement is as follows:

"Portland, Oregon, January 19, 1911.

"Received from the Northwest Bill Posting Company four hundred sixty-five and 50/100ths ($465.50) dollars in full settlement of all claims to date for which amount I agree to dismiss the suit now pending in the Superior Court of the State of Washington for the county of Clarke in which I am plaintiff and C. Schley and the Northwest Bill Posting Company is defendant.

"[Signed]    E. M. MEACH."

Such writing was executed by E. M. Meach with the purpose and intention of being a full and complete settlement of the suit hereinbefore mentioned, and by it Meach agreed to dismiss the action. Relying upon the written agreement of Meach to dismiss the action, and believing that the same had been fully settled and satisfied, C. Schley left the State of Washington and has remained away ever since that time. Thereafter in violation of his agreement of settlement with Schley and with the purpose and intention of wronging, defrauding and cheating him and all other parties interested in such action, after ascertaining that Schley had left the State of Washington and that his whereabouts were at the time unknown, E. M. Meach refused to dismiss the action and caused the same to be set down for trial without notifying Schley, or the surety upon his bond, or any other person interested therein. Thereafter, in violation of his written agreement to dismiss the action, he wrongfully, unlawfully and by fraud practiced upon the court caused the same to be tried without the knowledge of Schley and without the latter being present in said court to protect his interest thereunder. By reason of this fraud practiced upon the court and upon Schley, Meach caused a judgment for the sum of $737.26 to be rendered in that action in his favor and against defendant Schley and the

United States Fidelity & Guaranty Company which had signed the attachment bond. Some time after obtaining such judgment, Meach notified the plaintiff herein as surety upon the bond of Schley and demanded payment of the judgment. The plaintiff company notified this defendant C. A. Sheppard, who had signed the indemnity agreement, of the judgment rendered against Schley and demanded of him as indemnitor that he pay the judgment. Immediately upon receipt of this notice, C. A. Sheppard notified the guaranty company of the facts hereinbefore stated and of the fact that such judgment had been wrongfully and unlawfully obtained in violation of the written agreement of E. M. Meach to dismiss the action, and advised the company, that the claim of Meach in that action had been fully settled and discharged; that the pretended judgment obtained by him had been wrongfully and illegally procured and was not of any force or effect; that it was the intention and desire of the defendant Sheppard to institute a suit in said court in the name of the plaintiff, the United States Fidelity & Guaranty Company, for the purpose of having such judgment set aside upon the ground that the same had been wrongfully obtained. Defendant Sheppard also notified plaintiff that he had employed, at his own expense and without costs to the plaintiff, an attorney who was authorized to practice law in the State of Washington, and who was familiar with the practice therein, for the purpose of bringing such suit. He further notified the plaintiff that he had arranged for a bond, as required by law, that he would pay the costs and expenses of said suit, that an attorney was employed by him who was familiar with all the facts hereinbefore stated and would verify said complaint, and asked permission of

the plaintiff herein to institute and carry on said suit for the purpose of setting aside the pretended judgment in the name of plaintiff herein. The plaintiff refused to permit such suit to be instituted or carried on in its name or to permit this defendant to take any action in the name of the United States Fidelity & Guaranty Company for the purpose of having the judgment in question set aside and annulled. In this refusal the plaintiff acted arbitrarily and in violation of the rights of Sheppard, as indemnitor, thereby willfully and unlawfully prevented defendant Sheppard from securing any protection against such judgment, and thereby deprived him of a substantial right belonging to him as indemnitor. At the time Sheppard signed the indemnity agreement to the plaintiff, he received no security therefor, which plaintiff well knew. In paying the judgment the plaintiff herein did so against the protest and objection of Sheppard and in violation of its duty to him as indemnitor.

Based on the findings of fact, the court made the following conclusions of law:

"That the said plaintiff, by reason of its refusal to permit the said defendant, Sheppard to institute and carry on a suit in its name for the purpose of having said judgment set aside, deprived the indemnitor Sheppard of a substantial right, and thereby released him upon his indemnity agreement. That in paying said judgment against the objection and protest of the defendant Sheppard herein," and in said refusal, Sheppard is released from all liability to the plaintiff."

A decree was entered in favor of defendant and for costs. Plaintiff objected to the findings of fact made by the trial court for the reason that the same were not supported by the evidence and requested findings in favor of the plaintiff.

It appears that in June, 1911, a few days before the case of *Meach* v. *Schley* was set for trial, J. P. Stapleton, attorney for Schley, informed Sheppard in regard thereto, and the latter told Stapleton and George B. Simpson, attorney for Meach, that the latter's claim against Schley had been settled, and Simpson intimated that if that were true he would dismiss that action. Sheppard forwarded the receipt to Stapleton for Simpson's inspection. Defendant C. A. Sheppard, an attorney of Portland, testified in substance upon the trial that on January 19, 1911, Meach, who had been a former business partner of Schley, came to his office; that he figured with him and reduced his claim to $465; that he asked him if he would take the note of the Northwest Bill Posting Company, and Meach said he would provided Sheppard would sign it personally; that he told him he would not do anything of the kind; that Meach finally accepted the note of the Northwest Bill Posting Company and agreed to look to that company and to it alone for payment. This witness further stated that Meach executed the receipt and agreement, and he (Sheppard) notified Schley and the guaranty company; that Meach said he would dismiss the suit; that he heard nothing more about the matter until June 24, 1911, when he sent the receipt to Schley's attorney at Vancouver, Washington, and went to South Bend in that state to try a lawsuit, where he was for about 14 days; that the case was tried in violation of that agreement; that the surety company would not sign the complaint or institute a suit to set the judgment aside unless Sheppard put up cash to cover the judgment and costs; that the company demanded $1,550 in cash and sufficient to cover costs; and that if the company paid the judgment it was without his con-

sent. He further stated that they offered a letter to save the company harmless on account of costs in the suit; that Mr. Hamaker offered to look to him for attorney's fees and to save it harmless on account of attorney's fees; that at first he (Sheppard) asked the company to put up an injunction bond which it refused, and then he told it he would get the bond.

It appears that the amount of cash demanded by the company to be deposited was afterward reduced to $800. The record disclosed that there was a lengthy correspondence between one G. E. Hamaker, the attorney whom Sheppard employed to institute a suit to set aside the judgment, and the representatives of the guaranty company at Portland, and at Tacoma, Washington, which was finally submitted to the home office of the company at Baltimore, Maryland. The correspondence culminated in the refusal of the company to assist the indemnitor, as shown by the following letter:

"United States Fidelity & Guaranty Company, Baltimore, Md.

"November 18th, 1911.

"Claim #32769.

"Messrs. Hubbert & Stanton, Tacoma, Washington—

"Gentlemen: Re Schley for the Northwest Bill Posting Company. We have your communication of November 10th with inclosures and have considered this proposition with a great deal of interest. In the first place, it is clear to us that we should not sign the complaint or affidavit submitted. The allegations of fraudulent practice on the part of the defendants' attorney are matters entirely without our knowledge and, moreover, it is contrary to our policy to ever make allegation of this sort in any suit if it can be avoided, especially when we have no direct interest as in this case. * * If as Mr. Hamaker states there is no other manner of securing justice to his clients, we regret the situation but do not see that the company is under any

obligation to take care of his clients; on the other hand, they obligated themselves to hold this company harmless and we must insist upon their complying with this obligation. * * "

The conclusion reached by the home office of the company was communicated to Sheppard as shown by the following letter:

"United States Fidelity & Guaranty Company, Balti-·more, Md.

"Portland, Oregon, Nov. 28th, 1911.

"Messrs. Hubbert & Stanton, Tacoma, Washington—

"Gentlemen:—Re T#32769, C. Schley for the Northwest Bill Posting Company.   Yours of the 24th instant in the above connection was duly received, together with copy of letter addressed to you by the home office of the company.   We are, accordingly, advising the attorney for our indemnitors that the company has refused to assist them in this matter.   The complaint and affidavit submitted to you were not returned as they should have been, with your letter.   Kindly see that they are sent to us at the earliest moment.

"Yours very truly,
"HARTMAN & THOMPSON,
"General Agents,
"By DOUGLAS R. TATE."

It appears that after the judgment was rendered in the Washington court a motion for a new trial was filed which was denied.   It also appears that a judgment was rendered against the surety company under the statute of the State of Washington at the same time as that against Schley.   This was when the company was first made a party to the record.   Defendants Sheppard and Martin, who were not parties to the record in the action of *Meach* v. *Schley,* failing to obtain the assistance of the surety company to bring a suit to set aside the judgment, filed a complaint to restrain

the levy of execution on the judgment, alleging the settlement with Meach. To this Meach interposed a demurrer, which was sustained by the court, and the suit was dismissed.

It is the position of counsel for plaintiff that as to his liability on the indemnity agreement defendant Sheppard had an adequate remedy at law by a motion for a new trial, and that a suit in equity to set aside the judgment as desired by him could not be maintained. The record shows that the defendant Sheppard exhausted all the means at his command to obtain a trial of the issues involved and did not secure such until the trial of the present case. From the manner of the presentation of this case upon appeal, it might be inferred that it was the impression of counsel that the cause would be tried *de novo.* Under Section 159, L. O. L., in an action at law the findings of the trial court on the facts are deemed a verdict. This court has uniformly held that such findings cannot be set aside on appeal if there is any competent evidence to support them: *Astoria R. R. Co.* v. *Kern,* 44 Or. 538 (76 Pac. 14); *Flegel* v. *Koss,* 47 Or. 366 (83 Pac. 847); *Courtney* v. *Bridal Veil Box Factory,* 55 Or. 210 (105 Pac. 896); *Sun Dial Ranch* v. *May Land Co.,* 61 Or. 205 (119 Pac. 758). The appellate court will examine the evidence in an action tried by the court without a jury only to the extent of determining if there is any competent evidence to support the findings. We cannot review the weight or sufficiency of the evidence: *Seffert* v. *Northern Pac. Ry. Co.,* 49 Or. 95 (88 Pac. 962, 13 Ann. Cas. 883). In such a case the trial judge acts as a jury. The findings in this cause may be referred to as a verdict.

*Robb* v. *Security Trust Co.,* 121 Fed. 460 (57 C. C. A. 576), was originally an action by the latter

against the former as an indemnitor for the company having signed a replevin bond in the sum of $15,000 upon which a verdict and judgment had been rendered against it for the sum of $14,621.88.  Robb, the indemnitor of the surety company on the replevin bond, was notified to defend the action thereon which he did. After an adverse judgment, a writ of error was sued out.  The security company refused to execute a supersedeas bond or continue the litigation.  The indemnitor sued out the writ of error in the name of the Security Trust Company without a supersedeas to which the company subsequently objected.  After paying the judgment appealed from, the Security Trust Company notified the indemnitor that unless other security was given it would move to dismiss the appeal. Thereupon the writ of error was discontinued by the indemnitor.  The United States District Court held that the request of the Security Trust Company for indemnity of the amount of the judgment was not unreasonable and instructed a verdict for plaintiff, Security Trust Company.  Upon appeal to the United States Circuit Court of Appeals for the Third Circuit, after a full statement of the case, at page 464 of 121 Fed., 57 C. C. A. 576, that court observes:

"We only differ from the learned judge of the court below, in that we think there was testimony in this case tending to show that the security company did do something to impair the right of Mr. Robb to have the judgment against the said security company reviewed in the appellate court by a writ of error, and we think that it should therefore have been submitted to the jury to say whether the testimony so tending was sufficient to establish the fact of an improper and unjustifiable interference by the security company with that right of the plaintiff in error. * * The well-settled interpretation of such undertaking is that the liability

of the indemnitor is not fixed, except by definitive judgment against him on the replevin bond referred to. In any such suit, the indemnitee must, under the contract of indemnity, either in good faith defend himself, or vouch the indemnitor to defend the suit at his (the indemnitor's) own costs and charges, rendering such assistance as he may be called upon by the indemnitor to render in facilitating and furthering such defense. * * That is, the indemnitor is entitled, under such circumstances, to all the rights of defense to such a suit, including the right of review, which belonged to the indemnitee as the real party thereto.''

In regard to the demand for further indemnity, the case at bar is similar to that from which we have quoted. The latter case shows that where the question of the good faith of the indemnitor in making a further defense, and the fairness of the indemnitee in permitting and assisting in making such defense, are involved, whether the right of the indemnitor to make a full defense has been impaired by the act of the indemnitee is a proper question for the jury. In the case under consideration, Sheppard, the indemnitor, insisted upon and earnestly endeavored to obtain a full trial in the original case of *Meach* v. *Schley.* Relying upon the settlement which he had made for Schley, Sheppard was not present at the trial. A motion for a new trial, as its name indicates, is an application for, and not, as a rule, a full trial of a cause. It is not enough to say that Sheppard if he was not satisfied with the decision in that case should have appealed therefrom. What he asked was to have an original trial in the name of the United States Fidelity & Guaranty Company in order to produce evidence and complete the record so that an appeal would properly present the issues. If upon such trial he did not then win, an appeal would be a matter for consideration. Schley,

the other defendant in the case, could not be found. No one questions the conclusion of the Washington court as the record stood in that case. In the present litigation the trial judge acting as a jury found a verdict to the effect that Sheppard's request as an indemnitor to make such defense was reasonable; that the claim in the *Meach* v. *Schley Case* had been fully settled, and that the judgment rendered therein was fraudulent and not binding upon Sheppard as an indemnitor; that the United States Fidelity & Guaranty Company, the indemnitee, had not afforded Sheppard, its indemnitor, ample opportunity to fully defend in the litigation. There was without question competent evidence tending to support such findings or verdict, and this is as far as we are permitted to inquire. Sheppard contends that as an indemnitor he is not bound by the judgment of the Washington court. It is stated in 1 Freeman on Judgments (4 ed.), Section 181, as follows:

"In order to become thus bound, the covenantor must be tendered 'a full, fair and previous opportunity to meet the controversy,' " and that he should be allowed all the means of defense open to him had he been made a party.

In *Oceanic Steam Nav. Co.* v. *Campania Transatlantica Espanola,* 144 N. Y. 663 (39 N. E. 360), the rule is stated as follows:

"It is sufficient that the party against whom ultimate liability is claimed is fully and fairly informed of the claim and that the action is pending with full opportunity to defend or to participate in the defense."

In *Eaton* v. *Lyman,* 26 Wis. 61, the court in considering a case where the defendant was sued to contest his title to land, and where he brought in his grantor to bind him by the judgment, says:

"It should appear, not only that the grantor was notified of the suit and requested to defend it, but that he was allowed to do so to the utmost extent of the law, if he desired to. Otherwise a defendant in ejectment might acquiesce in an erroneous result of a trial, and refuse his grantor an opportunity to correct it by appeal, and still conclude him by the judgment in an action on his covenants. This would be clearly unjust."

See, also, *City of New York* v. *Baird,* 176 N. Y. 269 (68 N. E. 364); *Garrison* v. *Transportation Co.,* 94 Mo. 130 (6 S. W. 701); *City of St. Joseph* v. *Union Ry. Co.,* 116 Mo. 636 (22 S. W. 794, 38 Am. St. Rep. 626); *Ladd* v. *Kuhn,* 154 Ind. 313 (56 N. E. 671). We know of no hard-and-fast rule that would prevent a court of equity from entertaining a suit by one against whom a fraudulent judgment had been entered to set aside such judgment. *Marsh* v. *Perrin,* 10 Or. 364, is authority for such a suit. See, also, *Dist. etc.* v. *White,* 42 Iowa, 608. Mr. Pomeroy, in 4 Pom. Eq. Juris. (13 ed.), Section 1357, states in effect that, while the inadequacy of legal remedies is professed to be the test and limit of equitable jurisdiction in applying this criterion the modern decisions with some exceptions have certainly held "the legal remedy inadequate in many instances and under many circumstances where Chancellor Kent would probably have refused to interfere." Under the facts found by the trial court, the judgment in the action of *Meach* v. *Schley* was *prima facie* evidence only of the liability of Sheppard as indemnitor, and the latter had the right to interpose a defense in the present case: 22 Cyc. 93. The document signed by Meach is more than a receipt. It contains a contractual stipulation to dismiss the Washington case. Under Section 761, L. O. L., as well as under the federal

Constitution, the effect of a judicial record of a sister state is the same here as in the state where it was made. In the absence of any showing to the contrary, the court will assume that the common-law rules in force in this state are in force in a sister state: *De Vall* v. *De Vall,* 57 Or. 128 (109 Pac. 755, 110 Pac. 705). Therefore the Washington judgment should be given the same force and effect as though it had been rendered in Oregon; no more and no less.

It follows that the judgment of the lower court should be affirmed.