Argued October 9, reargued December 22, 1919, reversed and remanded March 9, 1920.

## SMITH v. BARNER.

### (188 Pac. 216.)

**Pleading—Answer Held not Admission That Note was Indorsed Without Recourse.**

1. Where defendant alleged that as trustee he transferred the note sued on without recourse to himself, *held* that such averment in the answer was not an admission that the note was indorsed without recourse.

**Bills and Notes—Where Trustee Transferred Note not Shown to be Negotiable, and it was not Established That the Indorsement was One Technically Known as Without Recourse, No Implied Warranty Resulting from Such Indorsement Arises.**

2. Where defendant alleged that, holding as trustee the note sued on, he transferred it without recourse to himself, and the complaint did not show the indorsement of a negotiable instrument without recourse, no implied warranty created by the Negotiable Instruments Act (Section 5898, L. O. L., et seq.) arises on the theory that the transfer was an indorsement of a negotiable instrument without recourse.

Evidence—Where Note is Indorsed Without Recourse, Parol Evidence
is Inadmissible to Explain Indorsement.
   3.   Under Section 5898, L. O. L., where a note is indorsed without
recourse, the statutory terms and provisions become a part of the
indorsement, and parol evidence is not admissible to explain the
written indorsement or in defense, as is the case where the transfer
is by delivery only.

From Yamhill: HARRY H. BELT, Judge.

In Banc.

The plaintiff alleges that on March 10, 1914, the defendant, by written assignment, sold and delivered to him a certain promissory note executed on August 18, 1913, for value, by Frank H. Greenman and wife to the defendant, in the sum of $8,000, payable on or before five years after date, with interest at 7 per cent per annum.   As a part of the same transaction, the plaintiff says, the defendant assigned a certain mortgage deed executed to secure the note, upon real property in the town of Sunnyside, Yakima County, Washington, which was then and is now of the value of about $12,000.   It is further alleged that at that time and in consideration thereof the plaintiff paid the defendant $6,700 in cash, and that:

"By the said sale and delivery of the said promissory note and mortgage deed, the said defendant did covenant to and with this plaintiff, that he was the owner of and had good right to sell and transfer the said instruments to this plaintiff, and that they were valid instruments of the character they purported to be."

It is then averred that the defendant did not keep his covenant, and that the same was broken, "because the said promissory note and mortgage deed were not valid instruments" of the character they purported to be, but their execution had been obtained from the said Frank H. Greenman and his wife by fraud and misrepresentations.   The facts constituting such fraud

and misrepresentations are then set forth in detail. By way of estoppel the plaintiff alleges:

"That the said defendant ought not to be admitted to deny the fraud and fraudulent representations alleged in the procurement of said promissory note and mortgage, and as set forth and alleged in the third paragraph of this complaint, for that

"On the tenth day of March, 1914, Frank H. Greenman and Olive R. Greenman, his wife, duly commenced an action in the Superior Court of the State of Washington for Yakima County, which court was then and there a court of general jurisdiction, under the laws of the State of Washington, and had full and complete jurisdiction over the subject matter of the action, to cancel and set aside for fraud and misrepresentations in obtaining the execution of the said promissory note and mortgage above described, against one C. W. Swartz and one J. R. Prigmore and the defendant, B. B. Barner, and caused summons in said suit to be served upon each of the defendants prior to the tenth day of March, 1914, and prior to the sale of said instruments to this plaintiff, and

"For that, the allegations made in said complaint, commenced in Yakima County, Washington, aforesaid, were and are the same allegations and statements of fraud and misrepresentation as are those alleged and set forth in paragraph three of this complaint, and

"For that, the said C. W. Swartz, and the defendant, B. B. Barner, and J. R. Prigmore failed and neglected to appear in or answer the complaint in the suit to set aside and declare void the said promissory note and mortgage above described, although duly served with summons therein, as by law provided in the state of Washington, and defaulted in said suit, and

"For that, thereafter, on the twenty-third day of May, 1914, a decree of the said superior court of the State of Washington for the county of Yakima was duly rendered and entered of record in said suit, in favor of the said Frank H. Greenman and Olive R. Greenman, and against the said C. W. Swartz, B. B. Barner, and J. R. Prigmore, defendants in said suit, declaring,

adjudging, and decreeing that the said promissory note
and mortgage deed above described were obtained by
fraud perpetrated by the said C. W. Swartz and B. B.
Barner upon the said Frank H. Greenman and Olive
R. Greenman, his wife, and that the same were fraud-
ulent and void, and should be and were canceled and
set aside and held to be of no effect. The fraud for
which the court set aside, canceled, and annulled the
said note and mortgage being the same as were con-
tained in the complaint in the action then pending in
Yakima County, State of Washington, hereinabove re-
ferred to, and being the same matters and things as
alleged and set forth in paragraph three of this com-
plaint; that said superior court for the State of Wash-
ington was then and there a court of general juris-
diction, having full and complete jurisdiction over the
subject matter of the action, and

"For that a decree of said court is conclusive and
binding, not only upon the said defendants in said
action, but upon this plaintiff.

"Wherefore, the plaintiff prays judgment that the
said defendant, B. B. Barner, should not be admitted
to deny the fraud in obtaining said instruments as
hereinbefore alleged."

"That by reason of the said fraud so perpetrated
by the said B. B. Barner and the said C. W. Swartz
in the aforesaid transaction between themselves and
the said Frank H. Greenman and Olive R. Greenman,
wherein the said promissory note and mortgage were
executed, and by reason of the said decree of the said
Superior Court of the State of Washington, for the
County of Yakima, declaring the said transaction of
the said promissory note and mortgage fraudulent and
void, this plaintiff was and is forever precluded from
foreclosing the said mortgage deed, or collecting the
sum named in the said promissory note, or any part
thereof."

It is asserted that by reason of such facts the plain-
tiff was and is now damaged in the sum of $6,700, with

interest from March 31, 1914, for which he prays judgment.

In his answer the defendant admits the purchase and assignment of the note and mortgage as alleged, but denies every other allegation in paragraphs 2, 3, 4, and 5, of the complaint, except as set forth in the further and separate answer, and makes a general denial of paragraph VI. For affirmative defense, he alleges that on June 4, 1913, one C. W. Swartz was the owner in fee of the real property described in the complaint, and desired to transfer the title to the defendant, to be held by the latter in trust for him; that on June 5, 1913, Swartz made such conveyance without any consideration; that since that time the defendant has held the bare legal title to said property as trustee, having no authority to transfer it without the express consent of Swartz, and—

"That on or about the eighteenth day of August, 1913, the said Swartz stated to the defendant herein that he was about to exchange said property for 640 acres of farming land in Alberta, Canada, and directed said defendant, as trustee for said Swartz, to execute a deed to said property in Yakima County, Washington, to one Frank Greenman and Olive R. Greenman, husband and wife, and further stated to this defendant that said Greenman and wife would execute to this defendant a deed for said property, together with a mortgage in the sum of $8,000 on the said property in Yakima County, Washington, being the same property conveyed by this defendant as the trustee for said Swartz. That on the eighteenth day of August, 1913, the said Greenman and his wife deeded to this defendant, as the trustee for the said Swartz, the said land in Canada, subject to a mortgage of $4,000, and this defendant, acting as a mere trustee for said Swartz, without interest, deeded the said Sunnyside property in Yakima County in Washington to the said Greenman and his wife, and on the twenty-third day

of August, 1913, the said F. H. Greenman and his wife executed and delivered to this defendant, as trustee for Swartz, their note for $8,000, secured by a mortgage on said Sunnyside property in Yakima County, Washington. Said mortgage was duly filed for record. That this defendant acted merely as trustee in said transaction for said Swartz, and took no part in the negotiations for the exchange of said properties, made no statements or representations to said Greenman or his wife, concerning said exchange of property, knew nothing of the terms or conditions of the exchange, and in truth and in fact, never saw or held any conversation or communications, written or otherwise, with the said Frank H. Greenman or his wife, and had no other knowledge of the said transactions, nor any knowledge as to what was said by said Swartz to said Greenman and his wife. That subsequent thereto the said Swartz stated to this defendant that he had sold said note and mortgage, executed by said Greenman and wife to the plaintiff herein, and subsequently presented to this defendant a written transfer and assignment of said note and mortgage for execution, which he [Swartz] had caused to be prepared, and requested defendant to execute the same for and on his, the said Swartz's, behalf. That this defendant in obedience thereto did transfer said note and mortgage to the plaintiff herein. That this defendant took no part in the negotiations leading up to the sale of said note and mortgage to the plaintiff, held no written or other communications with the plaintiff regarding the same, made no representations to plaintiff, but acted merely as the trustee for and on behalf of said Swartz. That all of the negotiations prior and subsequent to said sale of said note and mortgage were carried on solely and only between the plaintiff herein and said Swartz. That no consideration moved from the plaintiff herein to this defendant personally. That this defendant received the sum of $6,700 in cash only as the trustee for said Swartz, and immediately after the same was received said sum was paid over to the said Swartz by defendant. That the plaintiff herein

had full knowledge of all these facts, and had full knowledge that this defendant was a mere trustee, without interest or consideration in said transaction, and had full knowledge of the fact that said Swartz was the real owner of said note and mortgage, and that it was Swartz he was dealing with and not defendant; and had all such knowledge prior to the date when said note and mortgage were sold. That defendant transferred the said note without recourse as to himself.

"That the said action begun by said Greenman in the Superior Court of the State of Washington for Yakima County, as set forth in paragraph four of the complaint in this action, was not begun alone against this defendant, but against said Swartz, and plaintiff herein had full knowledge that said action had been begun against said Swartz when he actually purchased the said note and mortgage, and had knowledge that defendant acted merely as a trustee for said Swartz, without interest or consideration, in the transactions with said Greenman and wife and had knowledge of the fact that in said transactions with Greenman and wife the defendant had taken no part in them, save to act as a mere trustee in transferring titles.

"That after the plaintiff herein had purchased said note and mortgage, under said circumstances, he began an action to foreclose the same against the said Greenman and wife in the Superior Court of the State of Washington for Yakima County, and a decree was entered against the plaintiff herein, denying a foreclosure of said mortgage, for the reason that the plaintiff had knowledge, before the purchase of said note and mortgage, of the pendency of the said case of Greenman and wife against Swartz, and this defendant, and of the fact that this defendant was a mere trustee for the said Swartz, and that defendant was in no other manner connected with the transaction, and had full knowledge that defendant had not made any statements or representations, fraudulent or otherwise, in said matter to or with said Greenman and wife, and

said plaintiff should not now be permitted to deny that he had knowledge of all of said facts. That by reason of all such facts, and the knowledge of said plaintiff, it was not the duty or incumbent on the part of this defendant to appear in said case.''

The decision in that case was later affirmed by the Supreme Court of Washington. It is next averred that the plaintiff should be estopped to claim or assert that the defendant is in any way responsible for his indorsement or the assignment of the note and mortgage, and that he should proceed against Swartz, who is the real party in interest.

To this further and separate answer the plaintiff filed a demurrer upon the following grounds:

''The plaintiff demurs to all of the further and separate answer and defense contained in the answer herein upon the ground that the same does not state facts sufficient to constitute a defense to plaintiff's cause of action.

''Plaintiff also demurs to the entire answer of defendant upon the ground that the said answer does not state facts sufficient to constitute any defense to the complaint herein, including the denials and the separate and further affirmative answer.''

The demurrer was sustained on May 18, 1918, and the cause was continued to June 17th following, for the taking of proof as to the amount of damage. The defendant declined to plead further, and on that day a jury rendered a verdict in favor of the plaintiff and against the defendant for $8,416.32, upon which judgment was duly entered. The defendant appeals, contending that ''the court erred in sustaining the demurrer to the further and separate answer and defense of the appellant.'' That is the only error assigned.

REVERSED AND REMANDED.

For appellant there was a brief and an oral argument by *Mr. Frank S. Grant.*

For respondent there was a brief over the names of *Messrs. McCain & Vinton, Mr. Walter L. Tooze, Jr., Mr. P. C. Sullivan* and *Mr. J. E. Burdette,* with oral arguments by *Mr. W. T. Vinton* and *Mr. Sullivan* (with *Mr. Tooze, Jr.,* on former argument).

JOHNS, J.—1. It is very apparent that this case was tried in the Circuit Court on the theory that the note in question was a negotiable instrument, and was indorsed in writing by the defendant "without recourse." The complaint alleges that the defendant "by a written transfer and assignment sold, assigned, and delivered to the plaintiff a certain promissory note in writing executed on the eighteenth day of August, 1913, for value received, by Frank H. Greenman and Olive R. Greenman, his wife, to B. B. Barner." The note is not pleaded *in haec verba,* and the allegation quoted is not equivalent to saying that it was a negotiable instrument or that it was indorsed "without recourse." The answer admits that the "defendant transferred the said note without recourse to himself." That is not an admission that it was indorsed "without recourse."

2. The writer was under the impression that in the original argument here it was conceded by appellant's counsel that the note was negotiable and that it was indorsed "without recourse" in writing. On reargument counsel for defendant disclaimed any such admission and advised this court that he stood on his legal rights as they appeared from the pleadings. The distinction is important. For failure to make such allegations in the complaint, and in the absence

of such admission, the case would not come within the terms and provisions of the Negotiable Instruments Act (Section 5898, et seq., L. O. L.), or the legal effect of an implied warranty as therein defined; and for such reason the demurrer to the defendant's further and separate answer should have been overruled.

The defendant cites and relies upon *Carroll* v. *Nodine,* 41 Or. 412 (69 Pac. 51, 93 Am. St. Rep. 743), where it was held:

"An indorsement without recourse is not a contract, but merely operates to transfer the title; and hence parol evidence is admissible, to show that at the time of the transfer of a note by indorsement without recourse the buyer agreed to take the paper at his own risk, absolutely relieving the indorser even from the implied warranty of genuineness attending such a transfer."

That decision was founded upon a cause of action which arose before the negotiable instruments law was enacted and under the law-merchant as it then existed, and it is alleged in the answer:

"That at the time the defendant sold and indorsed the note to plaintiff, he was fully informed of all matters concerning the credit made thereon of date October 26, 1893, and that the same was a valid and genuine payment; that he then guaranteed that she should never at any time be held liable upon said note in any capacity, or for any part thereof; and that her indorsement of said note without recourse would, and in fact did, forever relieve and protect her from all liability thereon."

3. As we construe Section 5898, L. O. L., there is a vital distinction between the defenses which may be pleaded to an action upon a negotiable promissory note where the title passes by delivery and where it is

acquired by indorsement "without recourse." When it is transferred by delivery only, the transaction rests in parol, and a defense in parol may then be made. Under the negotiable instruments law, when such a note is indorsed "without recourse," it then becomes and is a written contract. The statutory terms and provisions are incorporated in and made a part thereof, and parol evidence is not admissible to explain or vary the written indorsement.

The case is reversed and remanded, with leave to each party to apply to the Circuit Court to file amended pleadings.            REVERSED AND REMANDED.

BENNETT, J. (Concurring in Result).—I concur in the result reached by Mr. Justice JOHNS in his opinion that this cause must be reversed.

There is absolutely no allegation in the complaint that the paper was made payable to order, or to bearer, or was negotiable in any way. Neither is there any allegation that the transfer by the defendant to the plaintiff was by indorsement on the back of the note. For all that appears, it may have been transferred by a separate and distinct paper, in which event it would not be a transfer within the negotiable instruments law. Therefore, it is clear that in the condition of the pleadings the judgment on the demurrer to the answer cannot stand.

But I cannot concur in what is said in the opinion as to the construction of Section 5898, L. O. L., or in the conclusion reached that the implied warranty mentioned in that section, applies when the indorsee has full knowledge of the entire facts, and agrees, either expressly or impliedly, that he will take his chances on the defective title.

In my judgment, such a construction was never contemplated by the legislative mind, and will work a gross fraud and injustice, not only in this case (if it shall turn out that there was such an understanding), but in a multitude of other cases where paper of this kind is transferred on speculation with full knowledge of the facts, and with the agreement and understanding that there is no warranty, and that the purchaser takes his chances. Such a construction of the section makes the law a pernicious trap to catch even the wary—to say nothing of the unwary.

No business man would suppose that by simply assigning a note and putting his name under the words *"without recourse,"* he was signing *a written cantract for recourse,* and a written contract which would absolutely shut him out from showing what was the real understanding and agreement. Such a construction puts the purchaser in bad faith and with full notice, upon exactly the same plane with the purchaser in good faith and in due course without notice —a proposition which is abhorrent to the whole spirit of the Negotiable Instruments Act.

An indorsement "without recourse" was never considered such a written contract, and the implied warranties thereunder were always subject to parol evidence of the real agreement of the parties at common law and by the law-merchant.

"The implied warranty is necessarily founded in good faith, and it will not attach except where the party relying upon such warranty has acted in good faith": 8 C. J., p. 393, § 579.

To same effect see Id., § 578.

"The contract of sale or transfer * * may be made in such form, or under such circumstances as to exclude the warranty of genuineness, which would

95 Or.—32

be otherwise implied by law. This has been held by repeated decisions'': Id. § 579.

Warranty in the sale of commercial paper runs only to the holder in due course: *Bruck* v. *Lambeck,* 63 Misc. Rep. 117, (118 N. Y. Supp. 494); *James* v. *Yeager,* 86 Cal. 184 (24 Pac. 1005).

Knowledge of the facts rebuts warranty: *Moore* v. *Worthington,* 63 Ky. (2 Duv.) 307.

If at the time of sale the seller expressly refuses to warrant, there is no warranty: *Gilfert* v. *West,* 37 Wis. 115; *Bell* v. *Dagg,* 60 N. Y. 528.

In *Strange* v. *Ellison,* 2 Bailey (S. C.), 385, it is said:

The seller of a promissory note warrants ''that the indorsements are genuine, *unless it appears that the transferee took it without reference to that security, or had agreed to run the risk of the indorsement being not genuine.*

''But, notwithstanding the general principle, it is equally certain that the contract of sale or transfer * * may be made * * under such circumstances as to exclude the warranty of genuineness, which would otherwise be implied by law'': *Straus* v. *Hensey,* 7 App. D. C. 289.

''It seems to me it would be absurd to hold that on the sale of property any fact affecting its title, quality, or validity, which is distinctly disclosed and known to the purchaser, can be said to be warranted by implication not to exist'': DAVIS, Judge, in *Curtis* v. *Brooks,* 37 Barb. (N. Y.) 479.

In 24 R. C. L., Section 455, it is said:

''A warranty of title is annexed by law to a sale of personalty only where there is nothing in the circumstances of the case to rebut that presumption.''

This question was carefully considered by the Supreme Court of New York in *Bank* v. *Gallaudet,* 120

N. Y. 298, 308 (24 N. E. 994, 996), in which the court said:

"The question as to whether there was an implied warranty depends upon the facts as to whether the defendant was an agent and disclosed his agency to the plaintiff, or whether that fact was known and understood by its officers in making the purchase."

And the cases of *Wilder* v. *Cowles,* 100 Mass. 487, and *Worthington* v. *Cowles,* 112 Mass. 30, are to the same effect.

There certainly was no *written* contract attached to such an indorsement in this state, independent of the statute, for the careful and deliberate decision of this court, formulated by one of the most eminent and learned of its judges, concurred in by a unanimous court, is to the contrary; and is in entire harmony with the general rule as shown by the authorities just quoted.

In *Carroll* v. *Nodine,* 41 Or. 412 (69 Pac. 51, 93 Am. St. Rep. 743), Mr. Justice WOLVERTON said:

"Where the transfer is by indorsement without recourse, or by delivery, the vendor's liabilities arise from the fact or contract of sale, and not upon the paper. * * Where an article of personalty in the vendor's possession is sold and delivered to another, and nothing is said, there goes along with the contract an implied warranty of title, and a failure thereof renders the vendor liable. The implied warranty attending the sale of commercial paper arises upon like principle. * * But we have seen that such an indorsement *does not constitute a contract in writing,* and serves merely *to transfer title, as in the case of delivery* when payable to bearer."

It is urged that the above decision was rendered as to paper, dated prior to the passage of the negotiable instruments law, and that, although it was rendered

three and one-half years after the passage of that act, yet that it had reference to the law as it was before, and not after, the act.

Granted that this is so; what words shall we point to in Section 5898, or anywhere in the body of the act, upon which we can predicate a decision, that the act made the implied contract a contract *in writing,* where by the law-merchant and by our own solemn decision there had been no contract in writing before. Where is the word or words that will bear that construction? I find none. Certainly the law does not *say* that the contract which it implies shall be a *written* contract. On the contrary, it is entirely silent in that regard, and leaves the contract to be implied from the *trans-action* and not from any written words; just as it was implied from the transaction and not from any written words by the law-merchant, as declared by the authorities generally and by our own solemn decision. Not only is there no word in the statute saying that the contract shall be in writing, or treated as in writing, but all the terms of the act, when taken together, show that this was not the intention.

Section 5871, L. O. L., provides:

"A qualified indorsement constitutes the indorser *a mere* assignor of the title to the instrument."

Is it not perfectly clear that this language puts the indorser without recourse, in exactly the same position as one who assigns by delivery, or orally, or by a separate written assignment upon another paper?

Again, how can we say that the statute makes a distinction between the warranty by mere delivery, and the warranty by indorsement without recourse, when the statute actually *couples them in the same phrase,* and makes exactly the same warranty apply to both.

Every person negotiating an instrument "by *delivery* or by *a qualified indorsement,*" warrants, etc.

Whether or not Judge WOLVERTON, in writing the opinion in *Carroll* v. *Nodine,* 41 Or. 412 (69 Pac. 51, 93 Am. St. Rep. 743), had this statute in mind, and recognized it as declaring the law-merchant as it had previously existed, is it not plain that his language is just as applicable as though he had the statute before him and recognized the warranty of the indorser without recourse as just the same, and to be coupled with the warranty by delivery, just as the statute couples them?

It follows that the statute of frauds does not enter into this case at all, because there was no written contract, in so far as a warranty was concerned, and the warranty mentioned by the statute is an implied warranty only, which exists without regard to the indorsement, from a mere sale and delivery of the note.

There is no reason, then, why this implied warranty from a mere sale of the article may not be changed or limited or abrogated by a parol agreement, either expressed or implied, just as fully and to the same effect that it could be done by a formal written agreement: *Carroll* v. *Nodine,* 41 Or. 412 (69 Pac. 51, 93 Am. St. Rep. 743).

The warranty of the seller of a negotiable promissory note, who transfers the same by delivery or indorsement without recourse, is identical with the warranty of the vendor of any other kind of property, who, primarily, in all cases warrants the title to the same; but this warranty may always be overcome by direct or circumstantial evidence tending to show that there was in fact no warranty, but that the buyer took the title with knowledge and at his own risk.

In a note to 62 Am. Dec., p. 463, it is said:

"In America the authorities are uniform to the point that on a sale of chattels * * there is always an implied warranty of title, *unless the circumstances are such as to show that the vendor was not selling as owner,* * or that the purchaser was to take the risk of the title.*"