(December 15, 1923.)

## H. L. MOODY, Respondent, v. MORRIS-ROBERTS COMPANY, a Corporation, Appellant.

[226 Pac. 278.]

BILLS AND NOTES—NEGOTIABLE INSTRUMENT LAW—APPLIES ONLY TO NEGOTIABLE INSTRUMENTS—HOLDER IN DUE COURSE—WARRANTY OF TRANSFEROR—NOTE TAKEN BY NONCOMPLYING CORPORATION— NOT VOID—EFFECT OF DIRECTED VERDICT.

1. The Negotiable Instrument Law applies to negotiable instruments only, and does not affect the rights of parties to non-negotiable instruments.

2. Where the original payee of a note, although it may be negotiable in form, after maturity assigns it "without recourse," such instrument is not thereby negotiated or put in circulation as a negotiable instrument and does not thereby become a negotiable instrument, and the obligations arising out of such transfer are not governed by the Negotiable Instrument Law.

3. A promissory note, transferred by the original payee after maturity, although it may be negotiable in form, does not have an inception or origin as a negotiable instrument and does not thereby become negotiable, as that term is applied to commercial paper in the Negotiable Instrument Law.

4. A note, negotiable in form, transferred by a qualified indorsement by the original payee after maturity, constitutes the transferor a mere assignor of the title to the instrument, and the transaction is governed by the law relating to non-negotiable instruments or ordinary contracts.

5. One who takes an instrument, in form a negotiable note, from the original payee after maturity, is not a holder in due course, and takes it subject to all equities and defenses arising out of the paper itself and attaching to it, or out of the transaction with reference to which the paper was made, or any agreement between the original parties with relation to the instrument.

6. Under the Negotiable Instrument Law, the warranty of the indorser contained in C. S., sec. 5932, runs only to a holder in due course.

7. An instruction which directs a verdict has the effect of an order sustaining a motion for nonsuit, in that it admits the truth of the adversary's evidence, and every inference of fact that may be legitimately drawn therefrom. In effect it instructs

the jury that there is no evidence to support the claims of the party against whom it is directed.

8. A note given to a foreign corporation before it has complied with the constitution and statutes of this state relating to foreign corporations doing business in this state is not void, although such payee is without legal capacity to enforce the same in the courts of the state.

APPEAL from the District Court of the Fourth Judicial District, for Gooding County. Hon. H. F. Ensign, Judge.

Action to recover money paid for the purchase of a note. From judgment for plaintiff, defendant appeals. *Reversed.*

Bissell & Bird, for Appellant.

When it appears from the face of a note that action thereon is barred by the statute of limitations the same is not negotiable. (C. S., secs. 5868, 5932, 6609 and 6631; *Pena v. Vance,* 21 Cal. 142; *Clunin v. First Federal Trust Co.,* 189 Cal. 248, 207 Pac. 1009; *McCormick v. Brown,* 36 Cal. 180, 95 Am. Dec. 170; *Dern v. Olsen,* 18 Ida. 358, Ann. Cas. 1912A, 1, 110 Pac. 164, L. R. A. 1915B, 1016; *Southern Pac. Co. v. Prosser,* 122 Cal. 413, 55 Pac. 145; *McLeod v. Rogers,* 28 Ida. 412, 154 Pac. 970.)

A note taken by a noncomplying foreign corporation is not negotiable. (C. S., secs. 4775, 5868, 5922, 5932 and 6058; *Tarr v. Western Loan & Sav. Co.,* 15 Ida. 741, 99 Pac. 1049, 21 L. R. A., N. S., 707; 3 R. C. L. 1161; 8 C. J. 48; *Smith v. Barner,* 95 Or. 486, 188 Pac. 216; *Reynolds v. Vint,* 73 Or. 528, 144 Pac. 526; *Windsor Cement Co. v. Thompson,* 86 Conn. 511, 86 Atl. 1; *Mackintosh v. Gibbs,* 81 N. J. L. 577, Ann. Cas. 1912D, 163, 80 Atl. 554; 3 R. C. L., secs. 234 and 271.)

The statutory warranties attaching to the indorsement and transfer of a note without recourse do not accrue to one not a holder in due course. (C. S., secs. 5919, 5925, 5932, 6059, 6063, 6064; *Pocatello Sec. Trust Co. v. Henry,* 35 Ida. 321, 27 A. L. R. 337, 206 Pac. 175; *Bruck v. Lambeck,* 63 Misc. Rep. 117, 118 N. Y. Supp. 494; *Craig v.*

*Palo Alto Stock Farm,* 16 Ida. 701, 102 Pac. 393; 8 C. J., secs. 576, 693, 697, 1004; *Douville v. Pacific Coast Cas. Co.,* 25 Ida. 369, 138 Pac. 506; *Everding v. Toft,* 82 Or. 1, 150 Pac. 757, 160 Pac. 1160, par. 11; *First Nat. Bank of Lewiston v. Williams,* 2 Ida. 670, 23 Pac. 552; *Clark v. Paddock,* 24 Ida. 142, 132 Pac. 795, 46 L. R. A., N. S., 475.)

Where the record contains some evidence tending to support defendant's positions it is error to direct a verdict in favor of plaintiff. (*Pocatello Security Trust Co. v. Henry,* 35 Ida. 321, 27 A. L. R. 337, 206 Pac. 175.)

A note taken by a noncomplying foreign corporation is unenforceable and the makers cannot be compelled to pay. Therefore, such a note is not "payable on demand or at a fixed or determinable future time," as required by sec. 5868, C. S. (*Saline Valley Bank v. Peckham,* 108 Kan. 560, 196 Pac. 593.)

The warranties of sec. 5932 and the provisions of sec. 5914 are intended to apply to a holder in due course only. (*James v. Yaeger,* 86 Cal. 184, 24 Pac. 1005; *Farmers' etc. Bank v. Bank of Rutherford,* 115 Tenn. 64, 112 Am. St. 817, 88 S. W. 939; *American Hominy Co. v. Millikin Nat. Bank,* 273 Fed. 550.)

James & Ryan, for Respondent.

One who indorses a promissory note without recourse warrants, among other things, that he or it has good title to it, that all prior parties had the capacity to contract and that he (the indorser) has no knowledge of any fact which would impair the validity of the instrument or render it valueless. (C. S., sec. 5932; *Cressler v. Brown,* 79 Okl. 170, 192 Pac. 417.)

Such an indorsement does not impair the negotiable character of the instrument. (C. S., sec. 5905.)

It is no legal defense for a warrantor to say that the person to whom the warranty is given knew that such warranty was false. (*Newmyer v. Roush,* 21 Ida. 106, 120 Pac. 464; *Wilson v. Sunnyside Orchard Co.,* 33 Ida. 501, 196 Pac.

302; *Smith v. Barner,* 95 Or. 486, 188 Pac. 216; *Payette Nat. Bank v. Ingard,* 34 Ida. 295, 200 Pac. 344.)

The fact that a note is past due does not of itself render such note non-negotiable and an indorsement after maturity does not affect its negotiability. (8 C. J., pp. 53, 344, secs. 58, 522; *Leavitt v. Putnam,* 3 N. Y. 494, 53 Am. Dec. 322; *Mudd, Admx., v. Harper,* 7 Md. 110, 54 Am. Dec. 644; *Gardner v. Beason Trust Co.,* 190 Mass. 27, 5 Ann. Cas. 581, 112 Am. St. 303, 76 N. E. 455, 2 L. R. A., N. S., 767; *Carpenter v. Greenop,* 74 Mich. 664, 16 Am. St. 662, 42 N. W. 276, 4 L. R. A. 241.)

If a party sells a note, and it is not what upon its face it purports to be, and what he by implication affirms it to be, he is in justice, and by implied *assumpsit,* liable to the vendee for what he has received from him as the price of the note, on the ground of failure of consideration. (3 R. C. L., p. 1165 (2); 8 C. J., p. 397 (notes under 48b).)

For the purpose of the indorser's contract, the party taking the note with the indorsement is a holder in due course, notwithstanding his knowledge that the note was not an enforceable obligation of the maker. (*Erwin v. Downs,* 15 N. Y. 575; *First Bank of Notasulza v. Jones,* 156 App. Div. 277, 141 N. Y. Supp. 304; *Young's Estate,* 234 Pa. St. 287, 83 Atl. 201.)

"A note which is negotiable by its terms does not lose that characteristic until paid or merged in a judgment." (8 C. J., p. 52, sec. 55; *Pitman v. Walker,* 187 Cal. 667, 203 Pac. 739; *Manhattan Savings Inst. v. New York Nat. Exchange Bank,* 170 N. Y. 58, 88 Am. St. 640, 62 N. E. 1079.)

WILLIAM A. LEE, J.—This is an action by respondent against appellant to recover the amount he had paid appellant for certain promissory notes purchased from it. The first of these had been given by J. D. Johnson and his wife to appellant, for $500, dated January 7, 1911, due in one year, and secured by a real estate mortgage of even date therewith. The second note was for $580, dated October 20, 1911, due in six months, and also secured by a real

38 Idaho.—27

estate mortgage on property situate in Colorado, being executed by Mrs. Anna Johnson, who had signed the first note with her husband, J. D. Johnson. Both notes represented the same indebtedness.

Appellant is a Wyoming corporation, engaged in the mercantile business at Hagerman, Idaho. At the time of the execution of the first note, owing to an error in certifying its articles of incorporation, it had failed to comply with the statutory requirements relative to foreign corporations qualifying to do business in this state, and could not sue upon or enforce in the courts of this state any agreements made in its name or for its use. (*Morris-Roberts Co. v. Mariner,* 24 Ida. 788, 135 Pac. 1166.)

In July following the execution of the first note, it qualified to do business in this state. There is no contention that the makers of this note did not receive full consideration for its execution, and its infirmity then rested solely upon appellant being a noncomplying corporation at the time it took the note.

The execution of the second note by Mrs. Johnson was an effort on the part of both parties to validate the obligation represented by the first note. It included accrued interest, and was secured by a real estate mortgage on her property situate in Colorado. At the time negotiations between appellant and respondent for the sale and purchase of these notes began, this note was with attorneys in the state of Colorado, where it had been sent with instructions to enforce payment by foreclosure of the mortgage securing the same.

Respondent purchased the obligation represented by these two instruments in June, 1917, the first note being indorsed: "6–6–17. Without recourse. Morris-Roberts Co. By P. E. DuSault, Secty."

At or about the time respondent purchased these notes he had the secretary of this company also execute under seal a purported assignment of the mortgage securing the first note to Gilbert E. Brinton, fixing the date of the assignment as the 7th day of June, 1911. Thereafter an action was

commenced and prosecuted to final judgment by the said Brinton against the makers of this note, in an effort to foreclose the same, which action failed by reason of the original payee, appellant herein, being a noncomplying corporation at the time of its execution. The second note contains no assignment or indorsement, and appears to have been transferred by delivery only. Upon what theory respondent could prosecute the foreclosure proceedings in the name of Brinton, who had no interest whatever in the cause of action, does not appear. However, we do not see wherein the proceedings in that suit affect the question here involved, although the court, over objection, admitted the record of that cause in evidence in the trial of this one.

At the conclusion of the testimony in this case, respondent moved the court to direct the jury to find in his favor and against the appellant in the amount sued for, upon the ground that under the law and the facts admitted by appellant, respondent was entitled to judgment, and upon the further ground that there was no issue of fact to submit to the jury. The motion was sustained, and under the court's direction the jury returned a verdict against appellant for the amount respondent had paid for these notes, together with interest from the date of purchase. From the judgment on this verdict, this appeal is taken.

An instruction which directs a verdict has the same effect as an order sustaining a motion for nonsuit, in that it admits the truth of the adversary's evidence and every inference of fact that may be legitimately drawn therefrom. In effect it instructs the jury that there is no evidence to support the claims of the party against whom such verdict is directed. (*Pocatello Security Trust Co. v. Henry,* 35 Ida. 321, 27 A. L. R. 337, 206 Pac. 175; *Marshall v. Gilster,* 34 Ida. 420, 201 Pac. 711; *Keane v. Pittsburg Lead Min. Co.,* 17 Ida. 179, 105 Pac. 60.)

The secretary of appellant company testified that respondent came to appellant's place of business in Hagerman and proposed to buy the notes representing this indebtedness against the Johnsons, saying that he had a deal on with the

makers, and that the notes might be useful. To this the witness replied that the notes were not in the company's possession at that time, but were with its attorneys. Later negotiations were resumed in the offices of Messrs. Bissell & Bird in Gooding, at which time Mr. Bissell was instructed to have the second note returned from Colorado. The infirmity of the instruments was fully discussed with respondent. He had his attorney give a check to appellant for the purchase price agreed upon, and the indorsement without recourse was written upon the first note and both were delivered to respondent. At the time both of these instruments were overdue more than five years, and upon their face were barred by the statute of limitation.

It is apparent from the record that respondent purchased these notes with knowledge that the first one given by the Johnsons, dated January 7, 1911, had been taken by appellant before it was legally qualified to transact business in this state. But this note was not a void contract. The contracts of a noncomplying foreign corporation are not void, but unenforceable in the courts of this state. The failure of a foreign corporation to comply with the law of the state before it can maintain an action goes only to its capacity to sue; that is, unless it complies with the law it has no capacity to sue. (*Katz v. Herrick,* 12 Ida. 1, 86 Pac. 873; *Tarr v. Western Loan & Savings Co.,* 15 Ida. 741, 99 Pac. 1049, 21 L. R. A., N. S., 707; *Valley Lumber etc. Co. v. Driessel,* 13 Ida. 662, 13 Ann. Cas. 63, 93 Pac. 765, 15 L. R. A., N. S., 299.)

Both of these instruments being past due more than five years when respondent purchased them, he knew, or at least the law presumes that he knew, that they were barred by the statute of limitations under C. S., sec. 6609. Respondent erroneously argues, however, that since these notes were in form negotiable instruments, the transaction of their purchase is governed by the Negotiable Instrument Law, which has been adopted in this state, and comprises C. S., secs. 5868 to 6064; that under C. S., sec. 5905, the indorsement "without recourse" is a qualified indorsement.

but does not impair the negotiable character of the instrument; and that under C. S., sec. 5932, every person negotiating an instrument by delivery or by a qualified indorsement warrants that the instrument is genuine, that he has good title to it, and that all parties had capacity to contract, subdivision 4 reading "that he has no knowledge of any fact which would impair the validity of the instrument or render it valueless."

Appellant insists that these warranties do not apply to a promissory note, even though it be negotiable in form, where it has been acquired from the original payee otherwise than in due course; that the law conclusively presumes that the assignee, when not a holder in due course, had knowledge of all of the facts; and further that in the instant case respondent had actual knowledge when he purchased these notes of all the facts which tend to impair their validity.

C. S., sec. 5914, provides that "an instrument negotiable in its origin continues to be negotiable until it has been restrictively indorsed or discharged by payment or otherwise." Respondent admits that he is not a holder in due course of either of these notes, but contends, if we understand his position, that having acquired these instruments which in their origin were negotiable, "origin" having reference to their negotiable form when executed, and they not having been restrictively indorsed or discharged by payment or otherwise, he is entitled to rely upon the warranty contained in subdivision 4 of C. S., sec. 5932; that the only benefit which inures to any of the prior parties to a negotiable instrument where it is transferred after maturity is to the maker; that these provisions of the Negotiable Instrument Law relating to transfers by indorsement apply with equal force to transfers after as well as before maturity; and that the rights of all subsequent parties thereto except as to the maker are governed by the provisions of this act.

The Negotiable Instrument Law is not a new law. It is with a few exceptions merely a codification of old laws that were in force and effect by virtue of judicial pronouncement

or legislative enactment, and generally uniform. (*Wettlaufer v. Baxter,* 137 Ky. 362, 125 S. W. 741, 26 L. R. A., N. S., 804; *Union Stock Yards Nat. Bank v. Bolan,* 14 Ida. 87, at 92, 125 Am. St. 146, 93 Pac. 508.)

It is a settled rule of construction that every statute is to be construed with reference to the general system of laws of which it forms a part, and must be interpreted in the light of the customary or unwritten law, of other statutes on the same subject, and of the decisions of the courts. (36 Cyc. 1144, sec. 7.)

"Negotiability" and "assignability" are frequently used interchangeably by all writers with reference to commercial paper. The term "negotiable" is frequently used to describe any written security which may be transferred by indorsement and delivery, or by delivery only, so as to vest title in the indorsee and enable him to sue upon the instrument in his own name. But in its commercial or restricted sense, as used in the Negotiable Instrument Law, it applies to paper which passes from hand to hand by an indorsement or delivery, which enables a "holder in due course" to take the same free from equities between the original parties. (3 R. C. L. 837, sec. 11; note 1 to *McClenathan v. Davis,* 243 Ill. 87, 90 N. E. 265, 27 L. R. A., N. S., 1017.)

The Negotiable Instrument Law applies to negotiable instruments only, and does not affect the right of parties to non-negotiable instruments. (Brannan's Negotiable Instrument Law, 3d ed., p. 1, and authorities cited under note 1; 8 C. J. 48, sec. 41, and authorities cited under note 73.) As to non-negotiable notes, the law remains as before the adoption of the Negotiable Instrument Law. (*Reynolds v. Vint,* 73 Or. 528, 144 Pac. 526; *Windsor Cement Co. v. Thompson,* 86 Conn. 511, 86 Atl. 1.)

*Bruck v. Lambeck,* 63 Misc. Rep. 117, 118 N. Y. Supp. 494, holds that under the Negotiable Instrument Law (Laws 1909, c. 43, sec. 116, which is sec. 66 of the original act, and the same as our C. S., sec. 5933), the warranty of the indorser runs only to the holder in due course. In that case, the indorsers set up the defense of usury in the inception

of the note against the maker and accommodation or surety indorsers made prior to delivery, and the court held that the note had its inception, if any, in the consideration given therefor by plaintiff, and not before, and that the issue was in legal effect between the original parties, and not as between the holder and the indorser, citing *Eastman v. Shaw,* 65 N. Y. 522, and *Strickland v. Henry,* 73 N. Y. Supp. 12, both of which cases hold that a note although negotiable in form has no legal existence as a negotiable instrument in the hands of any person not a holder in due course. If the warranties of a general or unqualified indorser under C. S., sec. 5933, are not available except to a subsequent holder in due course, it would seem clear that the warranties contained in C. S., sec. 5932, relating to a qualified indorsement would not be available to one who had not taken the instrument in due course.

In *Saline Valley Bank v. Peckham,* 108 Kan. 560, 196 Pac. 593, it is held that where a negotiable instrument is indorsed and delivered for full value and before maturity to an indorsee who takes it with knowledge of its infirmities, the transaction is governed by the law of contracts and not that of negotiable paper.

One who acquires negotiable paper otherwise than in due course takes it subject to all equities and defenses arising out of the paper itself and attaching to it out of the transaction with reference to which the paper was made, or of any agreement between the original parties with relation to the instrument. (3 R. C. L. 1045, sec. 250, and authorities cited under note 19; *Pensacola State Bank v. Melton,* 210 Fed. 57; *James v. Yaeger,* 86 Cal. 184, 24 Pac. 1005. See also, specially concurring opinion of Bennett, J., in *Smith v. Barner,* 95 Or. 486, 188 Pac. 216.)

From the foregoing authorities it is clear that a promissory note, although negotiable in form, that remains in the hands of the original payee until long after its maturity, or as in this case, until after it was overdue more than five years, and thus upon its face barred by the statute of limitations, and thereafter transferred by a qualified indorsement,

which constitutes the indorser a mere assignor of the title to the instrument, never has an inception or origin, as that term is used in C. S., sec. 5914, as a negotiable instrument, and that none of the provisions of the Negotiable Instrument Law have any application to the transaction, and that such transaction is governed by the law relating to ordinary contracts or non-negotiable instruments.

In *Buhler v. Loftus,* 53 Mont. 546, 165 Pac. 601, at 608, it is held that a note negotiable in form, but secured by a mortgage which is assigned with the note, is taken by the purchaser with knowledge that it is collectible only under the provisions of sec. 6861 of the Revised Codes, which provides that there can be but one action for the recovery of a debt or the enforcement of any right secured by a mortgage upon real or personal property, which is the same as our C. S., sec. 6949, and that a note of this character acquired in this manner is not "a courier without luggage," but is taken as a non-negotiable instrument. To the same effect is *Cornish v. Wolverton,* 32 Mont. 456, 81 Pac. 4, 108 Pac. 598.

It will be observed in the instant case that respondent took the acknowledgment of the secretary of appellant company to the assignment of the mortgage securing the first note, and had knowledge that the second note was secured by a mortgage upon real estate situate in Colorado; hence under the Montana rule, had he taken these notes before maturity, with this information, he would have taken them as non-negotiable instruments. However, it is not necessary to go to this extent in the case at bar. The notes in question were acquired more than five years after their maturity by an assignment "without recourse" from the original payee. They had never been negotiated or in any manner put in circulation as negotiable instruments. Hence they never at any time took on any of the qualities of negotiable paper, and the transaction by which they were transferred from appellant to respondent, and the obligations arising therefrom, are not controlled by the Negotiable Instrument Law. The rights of the parties are governed by the law

relating to non-negotiable instruments, and respondent having taken a transfer of this indebtedness "without recourse," he is precluded from a recovery against appellant.

The cause is reversed and remanded, with instructions to set aside the verdict and dismiss the action. Costs awarded to appellant.

Budge, C. J., concurs.

McCarthy and Wm. E. Lee, JJ., concur in the result.

Dunn, J., dissents.

### ON PETITION FOR REHEARING.

(May 29, 1924.)

WILLIAM A. LEE, J.—I adhere to the original opinion and am instructed by Mr. Justice Budge to say that he concurs. McCarthy, C. J., and Wm. E. Lee, J., concur in the reversal of the judgment. Mr. Justice Dunn dissents from the opinion and the conclusion reached.

It therefore follows that the judgment reversing and remanding the cause with instructions to dismiss the action should be vacated, and judgment entered that the cause be reversed and remanded with instructions granting a new trial, and it is so ordered. Costs are awarded to appellant. With this modification the petition for rehearing is denied.

McCARTHY, C. J., Specially Concurring.—I concur in the result in this case but on other grounds than those set forth in the opinion. C. S., sec. 5905, provides that a qualified indorsement constitutes the indorser a mere assignor of the title to the instrument. The indorsement upon which the suit is brought is a qualified indorsement. C. S., sec. 5932, provides:

"Every person negotiating an instrument by delivery or by a qualified indorsement, warrants:

"1. That the instrument is genuine and in all respects what it purports to be.

"2. That he has a good title to it.

"3. That all prior parties had capacity to contract.

"4. That he has no knowledge of any fact which would impair the validity of the instrument or render it valueless.

"But when the negotiation is by delivery only, the warranty extends in favor of no holder other than the immediate transferee.

"The provisions of subdivision 3 of this section do not apply to persons negotiating public or corporate securities, other than bills and notes."

At common law one who indorsed an instrument without recourse was not liable on the instrument itself in case the maker did not pay it, but was liable on an implied warranty like the vendor of any other chattel. In my judgment sec. 5932 is but a codification of this rule of the common law. I think the rule to apply in this case is the rule which applies to implied warranties in general. That rule is that no warranty will be implied when the defects in the article are known to the buyer. (35 Cyc. 409, xi; 35 Cyc. 396, iii.) But one case has been cited which treats of this aspect of the matter: *Smith v. Barner*, 95 Or. 486, 188 Pac. 216. The majority opinion takes a view contrary to the one above expressed, holding that under the Negotiable Instruments Law the warranties mentioned in the statute become part of the written agreement evidenced by the note, and to admit evidence that the person to whom the note was indorsed without recourse knew of the defects would be varying the terms of a written agreement. On the other hand, the view which I favor is expressed in the concurring opinion of Justice Bennett.

In *International Harvester Co. v. Beverland,* 37 Ida. 782, 219 Pac. 201, this court held:

"One whose signature on a negotiable instrument clearly shows that he signed in the capacity of a maker may not show an oral agreement that he shall be deemed to have signed in a different capacity.

"Where the question is in what capacity a party signed a negotiable instrument, parol evidence is admissible only if

an ambiguity appears in the body of the instrument, or in connection with the signature.''

It does not seem to me that this is inconsistent with the position which I take in the present case. If the correct view is that the warranties mentioned in sec. 5932 are incorporated into the indorsement in such a sense as to make them express warranties it follows that admitting oral evidence that the holder knew of the defects is a violation of the parol evidence rule. (*International Harvester Co. v. Beverland, supra.*) Moreover, this court has held, in accordance with the weight of authority, that one who purchases a chattel with an express warranty is not barred from suing on the warranty by the fact that he knew of defects in the article. (*Wilson v. Sunnyside Orchard Co.,* 33 Ida. 501, 196 Pac. 302.) However, I take the view that the warranty created by C. S., sec. 5932, is not an express warranty but an implied one. Before the passage of the Negotiable Instruments Law such a warranty was implied by operation of law, to wit, the common law. Since the passage of the Negotiable Instruments Law such a warranty is implied by the statute. In both cases the warranty is implied by operation of law, and is to my mind an implied, not an express, warranty. I think that both justice and logic support the view that the warranty, being implied, is not available to one who takes with knowledge of the defects.

In the present case the evidence was conflicting as to whether respondent knew of the defects in the note when he took it. This question should have been submitted to the jury with the instruction that knowledge of the defects complained of would bar recovery on the warranty.

The judgment should be reversed, and the case remanded for a new trial in accordance with the views herein expressed.

Justice Wm. E. Lee authorizes me to state that he concurs in this opinion.