José Cintrón, Jr., Plaintiff and Appellee, v. José Domínguez et al., Defendants and Appellants.

No. 8361. Argued April 17, 1942.—Decided May 29, 1942.

C. *Domínguez Rubio* for appellant Mrs. del Moral de Domínguez.
*José Sabater* for appellee.

Mr. Justice Todd, Jr., delivered the opinion of the court.

José Cintrón, Jr., brought, in the Municipal Court of Mayagüez, an action against José A. Domínguez and his wife, Micaela del Moral de Domínguez, in which he alleged as follows:

That on February 8, 1935, defendant Domínguez subscribed for himself and as attorney in fact of his wife a promissory note payable to the order of Francisco del Moral, to mature on August 7, 1935, for $500, without interest, which note was delivered to the creditor who indorsed and delivered it to the plaintiff; and that as the defendants had failed to pay said sum either in whole or in part, the creditor prayed for a judgment ordering the defendants to pay

to the plaintiff the aforesaid sum, with interest thereon at the legal rate from the filing of the complaint, and the costs.

The defendants in their answer admitted the execution and delivery of the promissory note, but alleged as a defense that the note had been given to Francisco del Moral "as a conditional gift" to compensate him for certain acts and payments which he promised to effect in connection with certain suits, which acts he has failed to perform either wholly or partially; that it was estimated that said acts could be performed within six months from the execution of the note and were to constitute the condition or consideration to render effective the donation of the note, but that Del Moral has failed to perform said condition.

The municipal court sustained the complaint and adjudged the defendants to pay to the plaintiff $500 with interest thereon at the legal rate from the filing of the complaint, and costs. An appeal was taken to the District Court of Mayagüez which in turn rendered a similar judgment. It is from the latter judgment that defendants have taken the present appeal, in which they urge that the lower court erred in overruling the demurrer for want of jurisdiction, filed by the defendants both in the municipal and district courts, and in finding that the plaintiff was a holder in due course of the promissory note, notwithstanding his having acquired the same after maturity, and that, therefore, the defense of lack of consideration raised by the defendant could not prosper as against him.

■ The first assignment is without merit. In *Coballes* v. *District Court*, 43 P.R.R. 571, 577, we held that "the accumulation of interest *pendente lite* does not divest the (municipal) court of jurisdiction once the same has attached," and in *Chalemán* v. *District Court*, 48 P.R.R. 434, 435, that "the principal sum claimed is the one that must be taken into account for determining the jurisdiction of a municipal court, and costs must not be considered as forming a part

of that sum for the purpose of fixing the amount in controversy and determining jurisdiction.''

The sum claimed in this case being $500 with interest thereon from the filing of the complaint and the costs, it is obvious that the interest in question is that accrued *pendente lite* and, since the costs form no part of the principal sum claimed, the Municipal Court of Mayagüez had jurisdiction to take cognizance of the action.

█ In our judgment, the second error assigned was committed.

According to the findings made by the lower court, the promissory note was executed on *February 8, 1935,* to mature on *August 7, 1935,* and was not paid at maturity, but on December 30, 1935, Francisco del Moral indorsed the same to his son-in-law José Cintrón, Jr., plaintiff herein. The trial judge in his opinion further found as follows:

*"Although the defendant by his evidence showed to the court that the promissory note subscribed by him in favor of Francisco del Moral was executed in consideration of the latter cancelling certain liens upon properties which had been allotted to Micaela del Moral de Domínguez in the testamentary proceedings of the heirs of Carmen Nadal y Freyre, and that said liens had not been cancelled, with the result that property belonging to the defendant Micaela del Moral Domínguez had been attached by virtue of said liens,* and subscribed by defendant José A. Domínguez, for himself and as attorney in fact of his wife, the other defendant, it is set down that the $500 of the aforesaid note, exclusive of interest, represents value received as a loan by the defendants and, moreover, said note was indorsed for value received by Francisco del Moral, in favor of José Cintrón, Jr., plaintiff herein, who was not a party to the former transaction, nor was it shown that he was aware of the fact that said promissory note for value received constituted a conditional or remunerative donation, for which reason this legal defense of the defendants should be and is hereby dismissed.'' (Italics ours.)

The lower court, notwithstanding having considered as proven the defense set up by the defendants, held that §§17,

53, and 59 of the Uniform Negotiable Instruments Law are not applicable because, in its opinion, the plaintiff is "a holder in due course of the obligation which he seeks to collect inasmuch as he received the same from Francisco del Moral for a valuable consideration and that he was unaware of any defect in the instrument assigned to him or in the title of the person who transferred the same to him."

Before the enactment of the Uniform Negotiable Instruments Law, in 1930, there was in force §52 of our Code of Civil Procedure which provides as follows:

"Section 52.—In the case of an assignment of a thing in action, the action by the assignee is without prejudice to any set-off or other defense existing at the time of, or before, notice of the assignment; *but this section does not apply to a negotiable instrument, transferred in good faith and upon a valuable consideration, before maturity.*

In *Martínez* v. *Garcia et al.*, 18 P.R.R. 708, 713, when construing said section, it was said:

"On the other hand, we agree with the appellees that section 52 of the Code of Civil Procedure has application to the parties in the present case; *but inasmuch as the note was assigned after maturity, any defense which was available against Fajardo would be equally available against Martínez.* However, as we think no valid defense was shown that would have been available against Fajardo, his assignee was *prima facie* entitled to recover." (Italics ours.)

We have already seen in the case at bar that the lower court held as proven the defense of the defendants against the original creditor Del Moral regarding the true consideration for the promissory note. Inasmuch as the note was executed in 1935, the Uniform Negotiable Instruments Law, enacted in 1930, was already in force, which law, as stated in *Moody* v. *Morris-Roberts Co.*, 226 P. 278, 280, was nothing else than: "with a few exceptions merely a codification of old laws that were in force and effect by virtue of judicial pronouncement or legislative enactment, and generally uniform (citing authorities)."

Sections 17, 53, and 59 of that act, embodied in the Code of Commerce of 1932, under §§369, 405, and 411, which the lower court held not to be applicable to the facts of this case, provide:

"Section 369.—Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto. As between immediate parties, and as regards a remote party *other than a holder in due course*, the delivery, in order to be effectual, must be made either by or under the authority of the party making, drawing, accepting or indorsing, as the case may be; *And in such case the delivery may be shown to have been conditional, or for a special purpose only*, and not for the purpose of transferring the property in the instrument. *But where the instrument is in the hands of a holder in due course, a valid delivery thereof by all parties prior to him so as to make them liable to him is conclusively presumed.* And where the instrument is no longer in possession of a party whose signature appears thereon, a valid and intentional delivery by him is presumed until the contrary is proved. (Italics ours.)

"Section 405.—A holder in due course is a holder who has taken the instrument under the following conditions:

"1. That it is complete and regular upon its face;

"2. *That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;*

"3. That he took it in good faith and for value;

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

"Section 411.—*In the hands of any holder other than holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable.* But a holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect of all parties prior to the latter." (Italics ours.)

For a party to be considered as a holder in due course he must meet the four requisites required by §405, *supra.* 10 C.J.S., Bills and Notes, §301; *Lafont* v. *Bird,* 57 P.R.R.

139, 149, in which latter case it was held, after citing §411, *supra* that: "In accordance with the provisions of this section, as the plaintiff in this case is not a holder in due course, the defense of payment of the obligation may be set up against him unless it appears from the evidence that the person who gave him the promissory note was a *bona fide* holder thereof."

For an extensive discussion of the different phases involved in the problem of negotiable instruments transferred after maturity, see the article on "Rights in Overdue Paper" by Zechariah Chafee, Jr., in 31 Harvard Law Review 1104–1153, where the question under consideration is summed up as follows:

"The solution of this problem which is supported by this article as most in accord with the true principles of bills and notes is: *Bona fide purchase for value after maturity gives legal title and cuts off equities of ownership but not equities of defense.* In other words, the *bona fide* purchaser for value without notice of an overdue instrument payable to bearer, indorse in blank, or specially indorsed to him, has legal title to the instrument and can keep it, regardless of any wrongs committed upon prior owners or other persons, and can recover upon it against any prior party who has not an equitable defense of his own, *but cannot recover against any party who has such a defense."* (Italics ours.)

With reference to those defenses, the above-mentioned text writer says further on that the rule has been stated in a final and rational way by Mr. Chief Justice Shaw of the Supreme Judicial Court of Massachusetts, in *Fisher* v. *Leland,* 4 Cush. (Mass.) 456 (1849), thus:

. "But where a negotiable note is found in circulation after it is due, it carries suspicion on the face of it. The question instantly arises, Why is it in circulation,—why is it not paid? here is something wrong. Therefore, although it does not give the indorser notice of any specific matter of defense, such as set–off, payment, or fraudulent acquisition, yet it puts him on inquiry; he takes only such title as the indorser himself has, and *subject to any defence which would be made, if the suit were brought by the indorser."*

In *Morgan* v. *U. S.*, 113 U. S. 476, 500 (1885) the Supreme Court of the United States, speaking through Mr. Justice Mathews, said:

". . . Ordinarily a note or bill when due becomes *functus officio*, because it was made to be paid at maturity, and if it fails of its intended operation and effect, the presumption is that it is owing to some defect, which has furnished a sufficient reason to the party apparently chargeable for not having punctually performed his obligation."

The rule above referred to obtains also in England ever since 1789, when a decision was rendered in *Brown* v. *Davies,* 3 T. R. 80. See Campbell, Cases on Bills and Notes, p. 568.

Since plaintiff José Cintrón, Jr., having acquired the note after maturity, is not a holder in due course, his claim was subject to such defenses as the defendants could have set up as against the original creditor Francisco del Moral, which included that of want of consideration. 10 C.J.S. Bills and Notes, §519. Inasmuch as it was held by the lower court that the defendants proved their defense to the effect that Francisco del Moral had not lent any money to the defendants but that the actual consideration for the note consisted in the obtention by Francisco del Moral of the cancellation of certain liens which burdened the property alloted to the defendant wife in the testamentary proceedings of Carmen Nadal y Freyre, and that Del Moral never performed that agreement, the only conclusion that should have been reached by said court is that the consideration for the promissory note never existed and, consequently, that Francisco del Moral could never have enforced the payment thereof as against the defendants, and this being so, it ought to have dismissed the case.

The appeal must be sustained, the judgment rendered by the lower court reversed, and another rendered instead dismissing the complaint, with costs.